STATE of Missouri, Respondent,

v.

Earl ROSS, Appellant.

No. WD 30712.

Missouri Court of Appeals,
Western District.

July 8, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 4, 1980.

Application to Transfer Denied
Sept. 9, 1980.

Gerald Kiser, Public Defender, Liberty, for appellant.

John Ashcroft, Atty. Gen., Kathleen Mills, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Earl Ross was convicted of burglary and stealing, §§ 560.070, 560.110 and 560.095, RSMo 1969, by a jury which assessed his punishment at eight years for burglary and four years for stealing. The court ordered such sentences to run consecutively.

On this appeal Ross contends the State failed to make a submissible case and his judgment of acquittal should have been sustained because the only evidence against him resulted from the piling of inferences and the court erred in giving two instructions because the name of the owner of the property varied from the name in the information. Affirmed.

At 4:01 on a September morning in 1978, Officer Terry Bowen, of the North Kansas City Police Force, was on patrol duty. Officer Bowen received a call that an alarm system at the Goodyear Store at 2021 Swift had sounded in the police dispatcher's office. When he received the call, Officer Bowen was about 12 blocks north of the store and headed immediately for the store. He stated he was on a north-south street with a clear and unobstructed view toward the store. As he neared 20th and Swift, he saw a van pull out from directly in front of the Goodyear Store. He followed the van and radioed the dispatcher of his activity. In the meantime, Sgt. Titsworth had gone in his patrol car to the Goodyear Store and discovered the front window broken out. When Officer Bowen received word that the Goodyear window had been broken, he turned on his siren and red light in an effort to stop the van. The van made no effort to stop and ran through several flashing red light signals without stopping. Finally, as the van neared a north-south alley, Officer Bowen saw three men jump from the van while it was still rolling with the engine running. Officer Bowen saw all three run into the alley, and just as he lost sight of them running down the alley, he saw headlights at the south end of the alley which turned out to be Sgt. Titsworth's car. At about the time Sgt. Titsworth arrived at the south end of the alley he was joined by a private security officer who had heard of the chase on his radio. In very short order other police officers arrived and Sgt. Titsworth stationed them on the north-south streets on the east and west of the alley. Sgt. Titsworth stated that within two to three minutes after he and Officer Bowen arrived at either end of the alley the entire area was sealed off. Of course all of the businesses in the buildings adjoining the alley were closed. The alley varied in width and contained several dumpsters and other areas which would lend themselves for use as a hiding place.

As soon as Sgt. Titsworth stationed his officers he used his patrol car loudspeaker and announced that they knew the men were in the alley and ordered them to come out. He stated that if they did not come out the Kansas City Missouri Canine Unit would be called. Upon this announcement one man emerged from the alley and was taken into custody. When no one else emerged, Sgt. Titsworth called the Kansas City Missouri Canine Unit, and shortly thereafter two officers with their dogs arrived. The officers took their dogs into the alley and in a few minutes Ross was discovered by one of the dogs hiding under a pile of wooden pallets near a loading dock. The buildings on either side of the alley contained a number of windows and doors and also fire escapes which would allow access from the ground to the roof. After Ross was discovered and the dogs did not locate anyone else in the alley, the officers searched the roofs and found another man

hiding under an air conditioning unit. No one else was discovered in the alley, adjoining streets, or on the roof tops. Both Sgt. Titsworth and Officer Bowen stated that after they arrived at either end of the alley no one else either entered or left the alley except for the three men accounted for.

The van was found to contain four television sets which were later identified by the manager of the Goodyear Store and returned to him.

■ Ross first argues that the evidence was not sufficient to sustain his conviction because to find sufficient evidence requires the piling of inferences. Ross says such piling results from inferring that Ross was involved in the burglary and stealing since it must be inferred that he was in the van because of an inference that he had run from the van into the alley, which in turn is based upon an inference that he had not been in the alley before the van stopped. It has been stated that it is doubtful that there is any such thing as a rule of either evidence or practice against piling of inferences, but if there is, it is but a guard against what the court would consider as "attenuated reasoning" on the part of the jury. *Braun v. Roux Distributing Company*, 312 S.W.2d 758, 764[3] (Mo.1958). However, inference piling has been recognized in recent criminal cases. In *State v. Brown*, 542 S.W.2d 789, 792[6] (Mo.App.1976) the court stated that "it is impermissible to draw an inference which is dependent upon another inference drawn from some other fact shown only by inference."

Officer Bowen observed the van leave from in front of the Goodyear Store shortly after the alarm sounded and followed it until the three men bailed out. It is obvious no one entered or left the van during the interval. The van was found to contain four television sets which were identified as having been taken from the Goodyear Store. In *State v. Arnold*, 566 S.W.2d 185, 188[4][5] (Mo. banc 1978) the court quoted from *State v. Cobb*, 444 S.W.2d 408, 414 (Mo. banc 1969) that " '[a]n inference of guilt is permissible from the unexplained possession of property recently stolen in a burglary and the inference exists both as to the offense of burglary and of stealing.' " The court also held that the possession of recently stolen property may be a joint possession of the accused and others and still support the inference.

■ Officer Bowen stated the alarm system at the Goodyear Store was one that was activated when the window was broken. The alarm did not sound at the store but sounded only in the police dispatcher's office. There was other evidence that the alarm system was contained in a tape which ran around the window which was broken. Sgt. Titsworth stated the broken Goodyear window had most of the glass on the inside. The alarm sounded just shortly before Officer Bowen observed the van pull quickly away from immediately in front of the Goodyear Store. Under *Arnold* this, together with the stolen property in the van, is sufficient evidence to convict the occupants of the van of burglary and stealing at the Goodyear Store.

■ The only remaining question is whether or not the evidence shows that Ross was one of the occupants of the van. There can be little if any doubt about that question. Officer Bowen saw three men flee the van while it was yet moving and run into an alley. While they were in the alley and just as he lost sight of them behind a dumpster, Sgt. Titsworth arrived at the south end of the alley. The alley was about a block long. Thereafter Ross was found hiding in the alley with no evidence that anyone other than the three men were ever found in the alley or on the buildings along the valley. This was ample evidence from which the jury could infer that Ross was one of the three men who fled the van. Ross did testify in his own behalf that he had been in the parking lot of a restaurant about a half block from the alley when he heard sirens and ran into the alley and hid because he had been drinking and had made considerable noise when he dropped a bottle. He said he thought the police were seeking him for disturbing the peace. Of course it was up to the jury to accept or reject Ross's testimony, and it obviously chose not to believe it.

It is also stated in *State v. Brown, supra,* that several inferences may be properly drawn from the same facts if each inference is supported by such facts. Here, the only inferences the jury was required to draw were amply supported by facts as to each. The inference of guilt arising from the unexplained possession of property recently stolen in a burglary is amply supported by the presence of the van immediately in front of the Goodyear Store within minutes after the alarm sounded, the broken window, and the four television sets belonging to the store being found in the van. The inference that Ross was one of the three occupants of the van arises from the testimony of Officer Bowen and Sgt. Titsworth that the alley was sealed off immediately after three men entered and that only three men were located in or near the alley. Thus, the inference that Ross was in the van rests upon facts entirely separate and independent from the facts giving rise to the inference of guilt based on the possession of recently stolen property. Even assuming the existence of the rule against the piling of inferences, no violation of such rule is shown in this case. The facts were sufficient from which the jury could find Ross guilty of the burglary and stealing.

Ross next complains of two instructions given to the jury upon the same grounds. Instruction 5 related to burglary of a building located at 2021 Swift in North Kansas City occupied by Goodyear Tire and Rubber Company, and Instruction 6 related to stealing television sets owned by Goodyear Tire and Rubber Company. Ross attacks both instructions on the ground that James Sumner testified that he was the store manager of the Goodyear Tire Center of North Kansas City. Ross contends these instructions were erroneous because there was no evidence ·that Goodyear Tire and Rubber Company occupied the building or owned the television sets and the information alleged Goodyear Tire and Rubber Company occupied the building and owned the property. A similar contention was rejected in *State v. Quinn,* 136 S.W.2d 985, 986–7[4–5] (Mo.1940). There it developed the true name of the company owning the building was Phillips Petroleum Company, yet it was referred to in the evidence as Phillips 66 Warehouse or Phillips 66 Oil Company Warehouse. The court stated the witnesses all agreed as to the location of the warehouse and that any error in the information regarding the name of the owner of the building could not mislead Quinn or his attorney. The court further stated from the evidence it was apparent that the company was commonly known by the names used by the witnesses. The court held the information was sufficient so that a judgment thereon would bar further prosecution because the identity of the building burglarized was made certain and the company was commonly known by the name used in the information. Here there is no doubt about the location of the building burglarized and the store broken into was referred to by various witnesses as the "Goodyear Store," "Goodyear Tire and Rubber," "Goodyear," and "Goodyear Tire Center." It is apparent the store was commonly known.by the number of names, but with the predominate name being "Goodyear." Ross does not attempt to demonstrate any prejudice, and under the holding in *Quinn,* the attack Ross makes on the instruction does not have any merit.

As a corollary Ross contends there was nothing to show that Goodyear owned the television sets. James Sumner described the television display in the store and stated that after the break-in four General Electric sets were missing. He identified the four General Electric sets found in the van as the sets missing from the store. There was sufficient evidence to show the ownership of the sets.

The judgment is affirmed.

All concur.