STATE of Missouri,
Plaintiff-Respondent,

v.

Doris RANDLEMAN, a/k/a Doris Kitcher, Defendant-Appellant.

No. 14074.

Missouri Court of Appeals,
Southern District,
Division Three.

Jan. 9, 1986.

Motion for Rehearing and to Transfer Denied Jan. 28, 1986.

Application to Transfer Denied March 25, 1986.

William Webster, Atty. Gen., John Munson Morris, Asst. Atty. Gen., Mary Elise Burnett, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Charles M. Shaw, James Jay Knappenberger, Shaw, Howlett & Schwarts, Clayton, for defendant-appellant.

MAUS, Judge.

A jury found the defendant guilty of aiding Brenda Dement in committing burglary in the second degree and stealing. As a persistent offender, she was sentenced to imprisonment for three years upon each count. The terms are to run concurrently.

The following is a sketch of the evidence tending to support the verdict. Shirley Worley owned and operated a combination beauty shop and clothing store in a shopping center in Cuba, Missouri. On August 31, 1983, she closed the business at approximately 5:00 p.m. However, she remained in the place of business until approximately 7:00 p.m., visiting with her friend and former employee, Brenda Dement. Upon leaving, Worley turned on an inside night light and locked the door.

At approximately 2:50 a.m., on September 1, 1983, Police Officer Callahan was patrolling the area. He saw a black van parked in front of the store. The van was owned by the defendant. Callahan observed there were no lights in the store. He saw the shadow of a person by a rack of clothes and then saw clothes moving by a window. He was able to see into the front part of the van. No one was in the two front seats. Callahan drove across the parking lot and to the rear of the store. Within a short time, estimated to be three minutes, Police Officer Bailey drove to the scene in response to a radio call.

Upon arriving in the shopping center, Bailey parked about 100 feet from the Worley store. He saw no one in the front seats of the van. He walked toward the van. When Bailey was about 40 feet from the van, two persons appeared in the front seats. The defendant was in the driver's seat. Dement was in the passenger seat. In response to a question, Dement said they were waiting on somebody. The police chief testified that Dement had told him she and the defendant had been riding around with a man.

The officers checked the store. The front door was unlocked. The main switch in the circuit breaker box had been turned off. A quantity of women's clothing from the store was found in the van behind the driver's seat under a knitted afghan.

The testimony of the officers established that from the time Callahan saw the van at 2:50 a.m. until the defendant and Dement were found in the van, only one vehicle entered the shopping center. That vehicle

stopped in front of an all-night grocery store. The lone occupant, after a brief trip into the store, drove from the area.

The following is a summary of Brenda Dement's testimony. On the day in question, she had driven from her home in Bunker to visit friends and relatives in Cuba. She visited with Shirley Worley between 5:00 p.m. and 7:00 p.m. During the visit, Worley said she was experiencing financial difficulty and suggested a scheme. That scheme was for Dement to come back to the store that night and take a quantity of clothes. In that way, Dement could have the clothes and Worley could collect upon an insurance claim. Dement replied that Worley did not really mean the scheme. Nevertheless, when Dement was leaving, Worley told her she was not going to lock the front door that night.

Dement then went to the home of her cousin, the defendant. They did laundry and had several drinks. About 12:30 a.m., Charles Stanford, of St. Louis, a boy friend of defendant, came to the home. The defendant and Stanford went for a ride in his automobile. After they left, Dement decided to carry out Worley's scheme. Dement drove the defendant's van to Worley's store. Dement put a quantity of clothing from the store in the van.

The testimony of Dement, supplemented by the testimony of Stanford, was to the following effect. Shortly after Dement put the clothing in the van, the defendant and Stanford were driving by the shopping center. The defendant saw her van. The defendant said to Stanford, "There's my truck, I am going to take it home." Stanford let the defendant out in the vicinity of the van. The defendant found Dement in the driver's side. She told Dement to scoot over, "I think you've had too much to drink, I'm going to drive." Upon Dement moving to the passenger seat, the defendant then got in the driver's seat. It was then the officers arrived.

Worley denied suggesting a contrived burglary. Worley stated that Dement had a key to the store that she did not turn in when she left Worley's employment. De-

ment said she had told no one of the conspiracy prior to her testimony because she expected Worley to come forward.

By her first point the defendant contends the evidence does not support the verdict. She cites the rule, "when the state's case rests upon circumstantial evidence, 'the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence.'" *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). She also emphasizes the principle that mere presence at the scene of a crime will not suffice to support a conviction. *State v. Mandina,* 675 S.W.2d 113 (Mo.App.1984). However, the state counters with the proposition, "[p]roof of any form of participation by defendant in the crime is enough to support a conviction and his presence at the scene, his companionship and conduct before and after the offense, are circumstances from which one's participation in the crime may be inferred." *State v. Gonzalez-Gongora,* 673 S.W.2d 811, 813 (Mo. App.1984). It further cites the following axiom, "[t]he circumstantial evidence, however, need not be absolutely conclusive of guilt or demonstrate the impossibility of innocence." *State v. Jelks,* 672 S.W.2d 722, 723 (Mo.App.1984). It emphasizes the rule that even assuming the verdict is based upon substantial evidence, this court must accept as true all evidence, and reasonably drawn inferences therefrom tending to prove guilt and disregard all contrary evidence and inferences. *State v. McDonald,* 661 S.W.2d 497 (Mo. banc 1983), cert. denied, —— U.S. ——, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985).

◼ Viewed in accordance with those rules, the evidence establishes more than the defendant's mere presence at the scene. At approximately 3:00 a.m. the defendant was in the driver's seat in her van parked in front of Worley's clothing store. The defendant's van contained a quantity of clothing taken from that store. The jury

was entitled to reject the tendered explanation of her presence. Such a rejection could have been based upon the inherent improbability of that explanation. Such rejection is supported by the testimony of the officers that Stanford's automobile did not enter the area during the critical interval. That testimony places the defendant in the van or in its vicinity when the clothing was being taken from the store. There was ample evidence from which the jury could infer and find the defendant aided Dement in committing the offenses. Cf. *State v. Porter*, 641 S.W.2d 843 (Mo.App.1982); *State v. Lyell*, 634 S.W.2d 239 (Mo.App. 1982); *State v. Puckett*, 611 S.W.2d 242 (Mo.App.1980); *State v. Ross*, 602 S.W.2d 816 (Mo.App.1980).

■ The amended information under which the defendant was tried alleged that she committed the offenses of second degree burglary and stealing. By her second point, the defendant contends the trial court erred in giving verdict directing instructions patterned upon MAI–CR 2d 2.12. Those instructions authorized a verdict of guilty upon a finding that the defendant aided Brenda Dement in committing those offenses. It has been repeatedly held that even though a defendant is charged as a "principal", it is not error to submit his guilt as an "aider." *State v. Barnes*, 693 S.W.2d 331 (Mo.App.1985); *State v. Franks*, 688 S.W.2d 787 (Mo.App.1985); *State v. Smith*, 655 S.W.2d 745 (Mo.App. 1983).

■ The defendant's third point is that the trial court denied her the constitutional right of an effective cross-examination of Shirley Worley. The defendant cites the proposition that the right to cross-examination is guaranteed by the Fifth Amendment and that an unreasonable limitation of that right requires reversal. *Bass v. United States*, 326 F.2d 884 (8th Cir.1964), *cert. denied*, 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964). However, to demonstrate such a limitation requires more than an isolated, conditional adverse ruling by the trial court. It has been said,

Additionally, defendant's claim of error does not fall within the ambit of *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), (limitations on cross-examination rising to a level of denial of constitutional right of confrontation), when he has failed to propound a proper offer of proof. *State v. Tolliver*, 562 S.W.2d 714 (Mo.App.1978).

*State v. Harris*, 620 S.W.2d 349, 356 (Mo. banc 1981). Further, even upon cross-examination, where it appears defense counsel has knowledge of an anticipated answer, error in refusing evidence is not preserved for review unless an offer of proof is made. *State v. Powers*, 613 S.W.2d 955 (Mo.App.1981). Also see *State v. Cameron*, 604 S.W.2d 653 (Mo.App.1980); *State v. Roesel*, 574 S.W.2d 944 (Mo.App.1978).

The defendant first argues the cross-examination was unreasonably limited in that she was not allowed to develop Worley's financial difficulties to establish a motive for the alleged scheme. The following is a synopsis of the action which is asserted to be a basis for that argument. In a preliminary remark, the defendant's counsel stated to Worley that he had looked at her income tax returns. He stated that he was then looking at her 1981 profit and loss statement. At this point the state objected to this use of Worley's private tax returns. The court ruled, "without any further showing, the objection is sustained." Then, following a colloquy between the court and defense counsel, Worley stated she had no objection to answering questions about her tax returns, but did not prepare them and could not explain them. Defense counsel then asked if Worley understood there was a separate schedule for her business. She replied, "Sir, I don't understand income taxes." The state then objected upon the basis of irrelevancy and the court ruled, "Sustained at this point."

■ Defense counsel obviously had knowledge of the contents of the tax returns, the subject of his inquiry. He did not make an offer of proof. He did not offer any part of those tax returns as an exhibit. The ruling of the trial court did

not foreclose the proper pursuit of the subject by the defendant. Measured by the above standards, the trial court did not improperly limit the defendant's right to cross-examine Worley. *State v. Harris,* supra.

The defendant's remaining argument under this point concerns an effort to show Worley's involvement with one Gary Havin. The defendant argues this would establish a motive for Worley to seek vengeance against Dement who was also involved with Havin. The following is a basis for that argument.

Q Mrs. Worley, you took a trip to Kentucky with Gary Havin, didn't you?

A No, sir.

Q You did not?

A No, sir.

MR. HOWALD: Your Honor, I'm going to object again. I don't know what the relevance of this is.

THE COURT: Sustained.

MR. WOODWARD: No further questions of this witness.

The defendant's remaining argument under the third point has no factual basis.

The defendant's final point is that the trial court erred in overruling her motion for a new trial upon the basis of newly discovered evidence. That basis was stated by two affidavits. In the first affidavit one Jimmy Webb, whose wife had worked for Worley, stated that Worley was involved with him and with Gary Havin. He said that Worley at one time asked him to help get her some insurance money by arranging for the disappearance of inventory. In the second affidavit, the defendant stated she had knowledge "that another reliable witness, whose name cannot now be divulged, will supply evidence" that Dement took the clothing in furtherance of the scheme proposed by Worley.

The defendant first contends the trial court erred in denying her an evidentiary hearing on this motion. The record demonstrates the trial court offered to hold such an evidentiary hearing. However, the defendant declined to present evidence. Defense counsel was then asked if the motion

was to be submitted on affidavits. The answer was "Yes." This contention of the defendant has no factual basis.

The defendant next contends the motion should have been sustained upon the basis of the affidavits. The criteria by which the sufficiency of such a motion and affidavits are to be measured has been succinctly stated in *State v. Taylor,* 589 S.W.2d 302 (Mo. banc 1979). The trial court "is vested with substantial discretion in deciding whether a new trial should be granted because of newly discovered evidence." *State v. Williams,* 652 S.W.2d 102, 114 (Mo. banc 1983). It is apparent the affidavits offered no explanation why the tendered evidence was not discovered before trial. Further, measured by the cited criteria, the contents of the affidavits demonstrate the trial court did not abuse its discretion in denying the motion. The judgment is affirmed.

PREWITT, C.J., CROW, P.J., and FLANIGAN, J., concur.