Calvert Leon ANTWINE, Appellant,

v.

STATE of Missouri, Respondent.

No. 72218.

Supreme Court of Missouri,
En Banc.

June 19, 1990.

Rehearing Denied July 31, 1990.

Susan L. Hogan, Columbia, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Andrea K. Spillars, Asst. Attys. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

A jury convicted Calvert Leon Antwine of first degree robbery, Section 569.020, RSMo 1978, second degree murder, Section 565.004, RSMo 1978, and capital murder, Section 565.001, RSMo 1978. The jury imposed sentences of thirty years imprisonment, life imprisonment, and death, respectively. This Court affirmed the convictions. *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). This is an appeal from the trial court's denial of Antwine's motion for post-conviction relief. Rule 29.15. Because this case involves the death penalty, this Court ordered transfer prior to opinion. We have jurisdiction. Mo. Const. art. V., § 10. Affirmed.

## I.

The facts of Antwine's crimes are set out in *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). We need not repeat them here.

Antwine, the movant, timely filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15. The motion court granted movant an additional thirty days to file an amended motion; appointed counsel subsequently filed six amended motions. The last five were filed by leave of court, over State objections that they were not timely filed. At the evidentiary hearing, movant and his trial counsel testified and movant presented several other witnesses, includ-

ing three police officers, seven of movant's friends and neighbors, a clinical psychologist, two attorneys and a corrections department caseworker. Though noting that the amended motion was not timely filed, the court "consider[ed] gratuitously the merits of all points raised by the defendant in his sixth amended motion." The court issued findings of fact and conclusions of law and overruled the motion.

## A.

Rule 29.15(f) requires that any amended motion "be filed within thirty days of the date counsel is appointed or the entry of appearance by counsel that is not appointed." It also allows the court to "extend the time for filing the amended motion for *one* additional period not to exceed thirty days." (Emphasis added).

 The time limitations of Rule 29.15 are valid and mandatory and place an increased responsibility on the movant, his counsel and the courts to litigate claims promptly. *Amrine v. State,* 785 S.W.2d 531, 533 (Mo. banc 1990); *Sloan v. State,* 779 S.W.2d 580, 581 (Mo. banc 1989), *cert. denied,* — U.S. —, 110 S.Ct. 1537, 108 L.Ed.2d 776 (1990); *Day v. State,* 770 S.W.2d 692, 695 (Mo. banc 1989), *cert. denied,* — U.S. —, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). The trial court was without authority to give additional time beyond that provided by Rule 29.15(f) and additional grounds alleged in the untimely motion were procedurally waived. *Amrine,* 785 S.W.2d at 533; *Sloan,* 779 S.W.2d at 582; Rule 29.15(d). On appeal, we shall consider only those allegations raised by Antwine in his timely filed motions.

## B.

In a post-conviction relief motion, the movant has the burden of proving his grounds for relief by a preponderance of the evidence. Rule 29.15(h). This Court's review of a denial of post-conviction relief is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j). The findings and conclusions are deemed clearly erroneous only if a full review of the

record leaves the appellate court with the definite and firm impression that a mistake has been made. *Sidebottom v. State,* 781 S.W.2d 791, 795 (Mo. banc 1989); *Day,* 770 S.W.2d at 695–96.

We turn now to consider movant's timely filed claims for relief under Rule 29.15.

## II.

Movant's first and third points challenge the submission to the jury of certain instructions relating to the jury's consideration of mitigating circumstances on constitutional grounds. This Court need not consider these points. "[A]n issue which could have been raised on direct appeal, even though it is a constitutional claim, may not be raised in a post-conviction motion, except where fundamental fairness requires otherwise and only in rare and exceptional circumstances." *Roberts v. State,* 775 S.W.2d 92, 96 (Mo. banc 1989), *cert. denied,* — U.S. —, 110 S.Ct. 1506, 108 L.Ed.2d 640 (1990). There are no exceptional circumstances here. The point is denied.

## III.

Movant's remaining timely-filed claims focus on the alleged ineffective assistance of his trial counsel. To show that "counsel's assistance was so defective as to require reversal of a conviction or death sentence," movant must show that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To show prejudice, movant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2065. Movant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065.

## A.

During the penalty phase, counsel called movant's brother and one other person to testify on his behalf. In his closing argument, counsel asked the jury to have mercy on the movant. He argued two statutory mitigating circumstances, which were submitted to the jury: no significant history of prior criminal activity by the defendant and defendant's age at the time of the crime. Section 565.012.3(1) and (7), RSMo 1978. Instructions to the jury during the penalty phase also allowed jurors to consider any other evidence in mitigation. Movant nevertheless claims that trial counsel was ineffective because he failed to develop other evidence in mitigation of punishment and failed to request the corresponding jury instructions.

Specifically movant claims that counsel should have introduced evidence and requested instructions for other specific mitigating circumstances, discussion of which follows. Much of the evidence movant claims should have been introduced in the penalty phase had previously been brought to the jury's attention during the guilt phase. However, an attorney, Susan Chapman, who testified as an "expert" witness for movant at the evidentiary hearing, opined that, in light of all the inflammatory evidence the jury had heard, counsel should have emphasized the mitigating evidence in the penalty phase.

▬▬ Counsel's presentation of the penalty phase of a criminal trial is a matter of professional judgment. Whether that judgment is effective or ineffective is measured by whether the advocacy was reasonable under the circumstances, not by the sentence the defendant receives. *Clemmons v. State*, 785 S.W.2d 524, 527 (Mo. banc 1990). Counsel has a duty to make a reasonable investigation of possible mitigating evidence or to make a reasonable decision that such an investigation is unnecessary. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. However, counsel's "election not to present mitigating evidence is a tactical choice accorded a strong presumption of correctness ..." *Walls v. State*, 779 S.W.2d 560, 562 (Mo. banc 1989),

*cert. denied*, —— U.S. ——, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). Counsel testified that the penalty phase strategy was to present two good witnesses "who projected enough feelings and emotions ... to sway this jury from sentencing him to the death penalty" rather than jeopardizing his credibility with the jury by presenting evidence inconsistent with movant's self-defense theory.

## B.

The first three mitigating circumstances sought by movant are statutory, Section 565.012.3, RSMo 1978, and are circumstances relating to the offense charged.

### (1)

▬▬ Movant first claims that counsel should have requested an instruction submitting his victim's participation in the offense as a mitigating circumstance. Section 565.012.3(3), RSMo 1978. Movant testified during the guilt phase that his victim initiated the altercation that led to the victim's death by charging him in the cell and trying to kick him; movant's testimony was thus consistent with his self-defense theory. There was also evidence during the guilt phase that during the original confrontation, before movant and victim were in custody, the victim had a chance to retreat, but chose to continue the altercation. Movant contends that counsel should have requested an instruction submitting the victim's participation in the fatal altercation as a mitigating circumstance.

Movant's contention ignores the jury's complete rejection of his self-defense theory by its guilty verdict. Counsel testified that he chose not to request an instruction contrary to the jury's previous fact-finding because he wanted to "maintain some credibility with the jury." This was sound trial strategy and not ineffective assistance of counsel.

### (2)

▬▬ Movant also claims that counsel should have requested an instruction that the jury consider whether the offense was committed while movant was under the in-

fluence of extreme mental or emotional disturbance. Section 565.012.3(2), RSMo 1978. Movant argues that, although the jury found he did not act in self-defense, there is a reasonable probability that a properly instructed jury could have determined that the events of the day of the crime were so intense and stressful that movant was under the influence of extreme mental or emotional disturbance when he stomped his unconscious victim to death. Counsel again chose not to request such instructions because evidence of mental or emotional disturbance was inconsistent with movant's self-defense theory. This, too, was sound trial strategy and not ineffective assistance of counsel.

### (3)

■ Movant also contends that counsel should have requested an instruction that the jury consider that movant's capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law was substantially impaired during the commitment of the murder. Section 565.012.3(6), RSMo 1978. Counsel testified that he had considered bringing in an expert during the penalty phase to present evidence of diminished capacity, but decided that to switch from self-defense in the guilt phase to diminished capacity in the penalty phase would "los[e] a certain amount of credibility with the jury." Counsel finally decided to make an emotional appeal instead and did not request an impaired capacity instruction. This was also a matter of trial strategy and not ineffective assistance of counsel.

### C.

The next two mitigating circumstances movant claims should have been presented to the jury also relate to the circumstances of the offense but are nonstatutory.

### (1)

■ Movant claims that evidence of the victim's threats to movant and his family should have been presented and consistent instruction based on that evidence should have been requested. Evidence that the victim had threatened movant and his family was presented during the guilt phase. Moreover, counsel testified at the Rule 29.-15 hearing that movant did not tell him of any threats prior to the date of the offense and movant did not allege any such threats in his statement to police. Movant's witnesses at the post-conviction hearing could only testify that movant had told them he had been threatened; they bore no first-hand knowledge of those threats. The motion court found no ineffective assistance in counsel's choice not to present evidence of prior threats to movant. This conclusion is not clearly erroneous.

Counsel diligently pursued a defense of self-defense in the guilt phase. The motion court found that counsel "provided a competent defense at trial." The motion court further found that evidence of threats to movant and his family was not sufficient to support an instruction of defense of others. To support such an instruction, movant would have had to have shown that his family was in imminent danger. *See State v. Ruffin*, 535 S.W.2d 135, 137 (Mo.App. 1976) ("only a present danger can be a legitimate justification for resort to self-defense"). Given the victim's incarceration, imminent danger to the movant's family could not be shown. The point is denied.

### (2)

■ Movant claims that even though the jury did not accept movant's self-defense claim, counsel should have requested a penalty phase instruction submitting that movant had asked that he not be put in the same police wagon or cell as the victim as a mitigating circumstance. The jury heard that evidence during the guilt phase. Movant's counsel testified at the evidentiary hearing that he felt the jury was sufficiently aware of that evidence and that he did not want to pursue the issue at the penalty phase because the police officer's testimony was that movant "ended up acquiescing in being put in the paddy wagon with the [victim]." Counsel's strategy, which avoided emphasizing the conflict between movant's contentions and police testimony was not unreasonable. The trial court so

found; that finding is not clearly errone-ous.

### D.

■ The remaining mitigating circum-stance instructions sought by movant re-late to his character and are also nonstat-utory. There, of course, is no absolute duty to present mitigating character evi-dence at the penalty phase. *Jones v. State*, 767 S.W.2d 41, 43 (Mo. banc 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 207, 107 L.Ed.2d 160 (1989).

### (1)

■ Movant contends there was no strategic reason not to submit his employ-ment history as a mitigating circumstance. Prior to the time of the offense, movant had worked more than two and one half years for the same employer. Movant so testified at trial. Counsel testified that he did not present this evidence during the penalty phase because he did not consider it to be a mitigating circumstance. Mov-ant's work record included "employment" as a drug dealer. A decision not to present evidence of a record which was potentially harmful is a reasonable strategic decision. *Sidebottom*, 781 S.W.2d at 798. The point is denied.

### (2)

■ Movant also contends that during the penalty phase counsel should have presented evidence and requested an in-struction that the jury consider that he was a good father. Movant testified about his genuine concern for his two small sons and that he spent more time with them than did their mother. They were well cared-for and well-behaved. Counsel did not request an instruction submitting this as a mitigat-ing circumstance because these facts were before the jury in the guilt phase; counsel had introduced pictures of movant's chil-dren during the guilt phase. Counsel was not ineffective; the evidence had been presented and the jurors had been instruct-ed that they could consider all evidence in mitigation.

### (3)

■ Although an instruction specifying lack of "significant history of prior criminal activity" was submitted, movant contends a stronger instruction should have been re-quested. Movant had no juvenile record and no history of violent behavior. His only prior record was a suspended imposi-tion of sentence for a conviction of assault with intent to rob without malice; he suc-cessfully completed his three years of pro-bation. Movant argues that the prior of-fense was already in the record and the jury should have been instructed on the mitigating aspects of movant's lack of sig-nificant, prior criminal activity. Counsel testified that he did not consider the com-pleted probation a mitigating circumstance. Further, counsel considered whether to bring a prior conviction to the jury's mind, and chose not to do so. Counsel testified he did not consider movant's juvenile record a mitigating circumstance because his adult record was not "clean." All of these were strategic decisions; they do not show ineffective assistance of counsel.

### (4)

■ Movant further claims he served his pretrial detention peacefully and that counsel was ineffective in failing to develop evidence or request an instruction based on movant's peaceful service of his pretrial detention. Evidence existed that would show that movant had been involved in a fight (in addition to the fatal fight) while detained prior to trial. Although movant claimed that someone else started the fight, counsel chose not to provide the State an opportunity in the penalty phase to present evidence of another fight involv-ing the incarcerated movant. One can scarcely argue with a strategic decision to avoid allowing the jury to focus on another fight involving movant while incarcerated; this is particularly so when the jury faced a decision whether to impose the death penal-ty when an aggravating circumstance was that the murder occurred while movant was incarcerated. The point is denied.

## IV.

■ Movant next claims that counsel was ineffective because he failed to object to statements made by the prosecutor during the State's penalty phase argument. Movant offered the testimony of an attorney at the evidentiary hearing that there is no tactical reason not to object to improper argument by the state in the penalty phase of a capital case. But failure to object, alone, does not establish ineffective assistance of counsel. *Stuckey v. State*, 756 S.W.2d 587, 591 (Mo.App.1988). Movant cites six statements as objectionable.

### A.

■ Three statements may be considered together. First, in describing the potential execution, the prosecutor stated that movant "would be put to death instantaneously." Second, the prosecutor said, "Why should you and I, as lawful working citizens of this community, work the rest of our natural lives just so Calvert Antwine can live in the penitentiary for the rest of his natural life ...?" Third, the state's attorney asked, "[I]sn't it much more humane to sentence this man to death so that his brother [and] two children can get on with their lives ...?"

Counsel testified that he did not object to these statements because he felt that the prosecutor's argument would make the jury angry and "do more damage than good" to the State. The motion court found that the "decision not to object to the arguments ... was a matter of trial strategy." As we have repeatedly said, reasonable strategic decisions of counsel do not provide a basis for a finding of ineffective assistance of counsel. The point is denied.

### B.

■ Movant next complains that defense counsel should have objected when the prosecutor said of movant, "[I]t is a far more humane execution than this man provided Eric Jones.... This man believes in capital punishment ... in the death penalty ... in execution without a trial by judge and jury ... in execution without a victim being represented by an attorney ... in

taking the law into his own hands, not only on the streets but when he's confined." Movant contends that these words show that the prosecutor argued an improper aggravating circumstance, characterizing movant's exercise of his right to trial as an aggravating circumstance. Movant cites *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (holding that the prosecutor could not comment on the defendant's exercise of his Fifth Amendment right to remain silent), in support of his contention that the prosecutor's argument invited the jury to punish movant for the exercise of his constitutional rights.

In reviewing the record, we agree with the motion court that the prosecutor's statement does not seek to punish movant for exercising his right to a trial by jury. Instead, the prosecutor's statement, read in context, highlights the nature and seriousness of the crime and movant's disregard for the law. The statement cannot be reasonably read to portray movant's exercise of his right to trial as an aggravating circumstance. The point is denied.

### C.

Movant next urges that his counsel was ineffective in failing to object to the prosecutor's assertion that "A jury in Jackson County one day is going to come back with the death penalty in a capital murder case. That day is going to be a day when ... a defendant has proven so clearly to 12 people that he will never be rehabilitated ..." Movant states there was no evidence in the case regarding whether movant would ever be rehabilitated.

■ It is proper for the jury to consider the character of the defendant in the penalty phase of a death penalty case. *Antwine*, 743 S.W.2d at 71. A prosecutor may state a conclusion if it is fairly drawn from the evidence; this is true even when it is not the only possible inference. *Grubbs v. State*, 760 S.W.2d 115, 119 (Mo. banc 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2111, 104 L.Ed.2d 672 (1989). There is evidence that movant coolly and deliberately murdered a second victim while both

he and the victim were in custody. The prosecutor could fairly infer that movant could not be rehabilitated and the statement is not objectionable. Defense counsel was not ineffective for failing to object to a statement for which a valid objection could not be offered.

### D.

Movant contends that his counsel was ineffective in failing to object when the prosecutor said, "We are asking you to recommend a sentence of death on Count II." Movant contends that this statement violated the rule in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), holding that the state must not seek to minimize the jury's sense of responsibility for determining the appropriateness of the death penalty. But the prosecutor made clear, earlier in his argument, that the jury was responsible for sentencing. Given the entirety of the argument, read within context, there is no reasonable likelihood that the jury could have been misled by the word "recommend" into minimizing its role in the process. Counsel was not ineffective in not objecting.

### E.

Finally, movant argues that the cumulative affect of these arguments was to invite the jury to impose the death penalty in an arbitrary and capricious manner, in violation of *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The argument is boilerplate, offered by the public defender in nearly every post conviction proceeding involving the death penalty. The motion court considered the argument and found "within the context of the entire argument [these statements did] not support defendant's contention that the arguments sought imposition of the death penalty in a[n] arbitrary and capricious manner. Defendant has failed to demonstrate that [these] arguments deprived him of a fair trial." We have reviewed the record and concur with the trial court's findings. The point is denied.

### V.

Movant claims, finally, that counsel was ineffective because he failed to arrange for a second mental evaluation of movant. This point goes to both the guilt and punishment phases. According to movant, the first mental evaluation showed movant's behavior was consistent with PCP intoxication, but reasonable investigation by counsel would have revealed that he was not on PCP. That should have alerted counsel that there had been a misdiagnosis and that a second diagnosis was needed. A second diagnosis, movant argues, would have helped to develop a defense of diminished capacity or mental disease or defect excluding responsibility and would have provided mitigating evidence for the penalty phase.

Movant was examined by Dr. Robijn Hornstra on March 2, 1984, approximately four months after the offense, at the Western Missouri Mental Health Center. Dr. Hornstra found no evidence of mental disease or defect at the time of the offense. Although movant testified at the evidentiary hearing that he had told Dr. Hornstra that he had not taken PCP that day, Dr. Hornstra concluded that movant had most likely taken PCP and valium on the day of the offense and that his behavior was consistent with PCP intoxication.

Dr. William O'Connor, a clinical psychologist, testified at the evidentiary hearing that he reviewed reports of the offense, interviewed movant and gave him a series of tests on September 12, 1988. His opinion is that movant's behavior was inconsistent with PCP intoxication and that movant suffers from a bipolar disorder and was probably in a manic phase at the time of the offense. Dr. O'Connor claimed that his examination is relevant because bipolar disorder is a brain chemistry disorder, tending to develop in early adulthood and to last for a lifetime, not a transient condition. It was most likely, Dr. O'Connor speculated, that movant had the disorder at the time of the offense.

The court "did not find Dr. O'Connor to be a credible witness concerning defendant's mental status at the time of the

event." This finding is not clearly erroneous. Dr. O'Connor examined movant nearly five years after the offense. Assuming for the sake of argument that the diagnosis is correct, it does not establish that movant suffered from a bipolar disorder at the time of the offense, nor does it prove that he was in a manic phase episode at that time. The court did not err in finding that testimony from police officers showed that movant's behavior was "inconsistent with behavior Dr. O'Connor claims would be exhibited during a manic phase episode."

Counsel testified that there was nothing in Dr. Hornstra's report or in counsel's contact with movant that made him feel a second examination was in order. Defense counsel also testified that movant's steadfastly stated goal was to seek and obtain acquittal. Movant had rejected counsel's advice to accept a plea bargain. The steadfast commitment of both counsel and his client to seek acquittal explains the rejection of other options, including the choice to seek a second mental examination, in favor of a self-defense theory.

The motion court found that movant "failed to show the existence of a factual basis indicating that his mental condition was questionable, and therefore his claim of ineffective assistance of counsel must fail." This finding is not clearly erroneous. "[T]he reasonableness of a decision not to investigate depends upon the strategic choices and information provided by the defendant." *Sanders v. State*, 738 S.W.2d 856, 858 (Mo. banc 1987). Eschewing a defense of diminished capacity in favor of self-defense is such a strategic choice. The point is denied.

### VI.

The judgment is affirmed.

RENDLEN, HIGGINS, COVINGTON, BILLINGS, and HOLSTEIN, JJ., concur.

BLACKMAR, C.J., concurs in separate opinion filed.

BLACKMAR, Chief Justice, concurring.

I concur, but would respond on the merits to the points contained in the "untimely" amendments, filed by leave of court and disposed on the merits by the trial court. I am persuaded that none of the points has any merit, and that the trial court correctly disposed of them.

I can understand the desire to have the issues fixed in a reasonable time, but can also understand the trial court's apparent assumption that amendments would be allowed in 29.15 proceedings on the model of amendments in civil actions generally, with the doctrine of relation back.

This opinion and other recent opinions solve the problem for the future, and movants and counsel now know what they must do to avoid procedural default. But the requirements were not so clear when the trial court acted in this case, and so I would place the affirmance on the merits of all issues submitted to and disposed of by the trial court.