STATE of Missouri, Respondent,

v.

Wallace Dean BITTICK, Appellant.

No. 73074.

Supreme Court of Missouri,
En Banc.

April 9, 1991.

Rehearing Denied May 3, 1991.

Susan L. Hogan, John A. Klosterman,
Columbia, for appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

Wallace Dean Bittick appeals his bench-tried conviction for first-degree robbery. The issues on appeal center around Bittick's right against self-incrimination guaranteed by the Fifth Amendment as applied to the States under the due process clause of the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), and as interpreted in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Specifically Bittick claims (1) that having requested an attorney, the confession he made to the police following that request may not be used constitutionally as evidence against him; (2) that he did not voluntarily, knowingly or intelligently waive his Fifth Amendment rights because of his intoxication, delirium tremens and his low level of education; (3) that police officials misled him as to the procedure by which he could obtain an attorney, in violation of Section 600.048, RSMo 1986; and (4) that the state failed to present substantial evidence to prove his guilt beyond a reasonable doubt.

The Court of Appeals, Western District, by a divided court, reversed the conviction outright, finding appellant's Section 600.-048.1 argument dispositive. Pursuant to Article V, Section 10, the court of appeals transferred the case to this Court, finding the issues presented matters of general interest or importance that should be decided by this Court. We have jurisdiction. The judgment of the trial court is reversed and the cause remanded for a determination of whether appellant's confession was the product of a knowing and intelligent waiver of his Fifth Amendment rights and for such further proceedings as may be appropriate.

I.

On June 30, 1988, Bittick heard that the police were interested in questioning him in connection with several armed robberies that had been committed in the St. Joseph,

Missouri area and voluntarily went to the St. Joseph Police Station for questioning. There, the police arrested Bittick, placed him in a cell, and summoned St. Joseph Police Detective Mike Hirter to conduct the interrogation. Upon Hirter's arrival, Hirter took Bittick to an interrogation room where he read Bittick a form advising him of his rights under *Miranda v. Arizona*.

Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can and will be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, then with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish. If you decide to answer questions now without a lawyer present, you still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

Hirter asked Bittick if he understood these rights. Bittick answered that he did. Hirter then read a second portion of the form dealing with the waiver of the *Miranda* rights.

I've read this statement of my rights. I understand what my rights are. Keeping these rights in mind, I'm willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me, or pressure or coercion of any kind have been used against me. I am 44 years of age. I attended school through the 9th grade. I am employed by "None."

Hirter asked if Bittick had any questions. Bittick replied, "How do I get one of those appointed attorneys?"

Hirter testified that he explained to Bittick that if he, Bittick, were charged with the crime, he could request the court to appoint an attorney. But, Hirter continued, if Bittick wanted an attorney present "it would be his responsibility to contact one."

Bittick blurted out, "I was hoping someone would catch me and blow me away." Hirter interrupted asking Bittick "if he was telling me he wanted to talk to me or if he wanted a lawyer."

Bittick said, "I guess I have to talk to you."

But Hirter responded that he "did not have to talk to me; that he had the right to remain silent."

"I guess I'll talk to you," Bittick decided. Hirter read Bittick the waiver portion of the Miranda form again to Bittick and inquired, again, if Bittick understood the waiver or had any questions. Bittick indicated that he understood the waiver, that he had no questions, and signed the waiver form.

At the hearing on the motion to suppress his confession, Bittick testified that he had been drinking for approximately two weeks and was suffering from delirium tremens at the time of his interrogation. Hirter recalled Bittick's hands shaking, but could not recall any scent of alcohol emanating from the appellant.

The trial court rendered oral findings of fact at the conclusion of the hearing on the motion to suppress the confession. The court said,

> [T]he court finds from the evidence that Sergeant Hirter talked to the defendant in regards to State's Exhibit 1 [the Miranda rights and waiver form]; that he fully advised him of his rights. The Court further finds that the defendant asked for an attorney, and Sergeant Hirter told him he couldn't have one; that he could get one, but he wouldn't furnish him one unless he was charged. The Court finds that the defendant said then he guessed he would have to talk to him. And Sergeant Hirter told him he did not have to talk to him; and he was not required to talk to him, but he could talk to them if he wanted to.
>
> The Court finds that he was advised of his rights, and that he chose to talk after being told that he did not have to talk to them without the presence of any attorney.... But I'm satisfied from the evidence heard that he voluntarily waived his right not to talk to them without the presence of an attorney, and that he did talk to them, and that this statement was freely and voluntarily given and it would be admissible in evidence....

The trial court also expressed some confusion about the state of the Supreme Court's *Miranda* rulings and concluded, "Unless there's something in the law that says that if you tell a man he has the right to have an attorney and he says he wants one, then that's the end of everything."

Bittick's attorney cited the trial court to *Eagan v. Duckworth*, 843 F.2d 1554 (7th Cir.1988), *rev'd*, 492 U.S. 195, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). The trial court indicated that he would read the relevant authority and "then I'll make a final ruling." Subsequently, the trial court admitted Bittick's confession into the evidence. Appellant waived a jury and the trial court found him guilty of first degree robbery in violation of Section 569.020, RSMo 1986. This appeal followed.

We consider and dispose of Bittick's first two points on appeal despite our reversal and remand on his third point. We do so because the issues there raised and discussed at II., A. and B., of this opinion challenge the constitutionality of appellant's confession on different grounds, each of which is relevant to the trial court's determination of the ultimate admissibility of the confession on remand.

## II.

In reviewing the trial court's ruling on a motion to suppress evidence, an appellate court will view the facts and reasonable inferences therefrom in the light most favorable to the trial court's ruling, disregarding all contrary evidence and inferences. *State v. Giffin*, 640 S.W.2d 128, 130 (Mo.1982). If the appellate court finds the evidence sufficient to sustain the trial court's findings, it will affirm. *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985).

### A.

 Bittick first contends that the trial court erred in admitting his confession into

evidence, claiming that Bittick "unequivocally" requested an attorney and that Hirter continued to question appellant after that request. He argues that once he requested an attorney, all questioning was "required to cease."

*Miranda* rights are "not themselves rights protected by the Constitution but ... instead measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974). In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the court held that an accused who requests an attorney, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused* himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1884–85 (emphasis added). Recently, in *Minnick v. Mississippi*, — U.S. —, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), the Supreme Court interpreted its *Edwards* holding as follows: "*Edwards* does not foreclose finding a waiver of Fifth Amendment protections after counsel has been requested, *provided the accused has initiated the conversation or discussions with the authorities.*" *Minnick*, — U.S. at —, 111 S.Ct. at 492 (emphasis added).

In this case, the trial court found that Bittick's statement, "How do I get an appointed attorney?" constituted a request for an attorney. Despite the equivocal nature of the "request," we are bound by the trial court's finding. The question thus becomes, under *Edwards* as interpreted by *Minnick*, whether Bittick "initiated the conversation or discussion with the authorities." *Minnick*, — U.S. at —, 111 S.Ct. at 492. To the extent that Bittick's argument assumes that all questioning must cease upon a request for counsel, it is quite wrong. *Edwards* holds that questioning must cease *unless* the accused initiates the conversation.

Several events followed Bittick's request for counsel. The first was a statement, completely unsolicited by Detective Hirter, that "I was hoping someone would catch me and blow me away." Second, Hirter did not seize this opportunity to elicit information concerning the crime from Bittick; instead, Hirter inquired immediately as to whether Bittick wished to talk to Hirter or whether Bittick wanted a lawyer. Bittick simply responded, "I guess I have to talk to you." But again Hirter declined to question Bittick. Instead, he informed Bittick that he did not have to talk with him and reiterated Bittick's right to remain silent. But Bittick said, "I guess I'll talk to you."

Only after this dialogue, initiated by Bittick, did Hirter again read the waiver portion of the *Miranda* rights form, inquire if appellant understood or had questions about it, and obtain Bittick's signature indicating his waiver of his *Miranda* rights.

At the risk of seeming redundant, we repeat the language from *Minnick*. It is dispositive of Bittick's initial point. "*Edwards* does not foreclose finding a waiver of Fifth Amendment protections after counsel has been requested, provided the accused has initiated the conversation or discussions with the authorities." *Minnick*, — U.S. at —, 111 S.Ct. at 492. Because Bittick initiated the conversation with the police following his request for an attorney, Bittick's first point shows no constitutional infirmity in the trial court's decision to admit Bittick's confession.

### B.

■ Appellant next urges that his confession to the police was involuntary, and therefore inadmissible, because Detective Hirter, in violation of Section 600.048.1, RSMo 1986, incorrectly advised Bittick that an attorney would be appointed by the court after he had been charged with a crime. That statute provides in pertinent parts,

It shall be the duty of every person in charge of a jail, police station, constable's or sheriff's office, or detention facility provided by any county to post in

a conspicuous place a notice stating in effect:

(1) That every person held in custody under a charge or suspicion of a crime is entitled to have a lawyer;

(2) That if any such person is held in custody in connection with any of the cases or proceedings set out in Section 600.042 [including persons charged with a felony—Section 600.042.3(1), RSMo 1986], and wants a lawyer to represent him and is unable, without substantial financial hardship to himself or his dependents, to obtain a lawyer, the state will provide a lawyer to represent him if he requests such representation; and

(3) That if the state provides a lawyer for him, he may be liable to the state for the cost of the services and expenses of the lawyer who handles his case if he is or will be able to pay all or any part of such costs.

The notice shall also contain a listing of the cases and proceedings for which public defender services are available under Section 600.042, and the telephone number of a person or answering service to call to request that a person designated by the state public defender system visit and interview him, and give him further information.

Bittick argues that he "was entitled to a public defender immediately upon request" under Section 600.048.1. Detective Hirter's failure to provide Bittick with the information required under Section 600.048.1, so Bittick's argument continues, violated the statute and rendered his confession inadmissible. This is because, appellant concludes, the police "did not adequately inform [him] of his *Miranda* rights under the applicable Missouri statute."

### 1.

Assuming solely for the sake of argument that Detective Hirter misstated the law to Bittick, we consider first whether such "misstatement" violates the United States Constitution as interpreted by *Miranda* and its progeny. In *Duckworth v. Eagan*, 492 U.S. 195, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989), the United States Supreme Court considered the constitutionali-

ty of an Indiana *Miranda* warning which said, among other things, "[w]e have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court." *Id.* at 198, 109 S.Ct. at 2877.

The United States Court of Appeals for the Seventh Circuit held on appeal that the language of the warning did not comply with the requirements of *Miranda*. The United States Supreme Court reversed, noting that "*Miranda* does not require that attorneys be producible on call, but only that the suspect be informed, as here, that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could not afford one.... *Miranda* requires only that the police not question a suspect unless he waives his right to counsel." *Id.* at 204, 109 S.Ct. at 2880. On the strength of *Duckworth*, we conclude that the information provided to Bittick by Detective Hirter was not constitutionally infirm.

### 2.

■ Bittick persists, however, arguing that Section 600.048.1 imposes a higher standard under Missouri law than is required under the federal constitution. Detective Hirter's "misstatement" of the law violated Bittick's rights under Missouri law, he urges, thus rendering his confession inadmissible.

It is true that *Duckworth* contains language that the warning read to the defendant in that case "accurately described the procedure for the appointment of counsel in Indiana." Nevertheless, we do not believe that the Supreme Court's reference to Indiana law is the constitutional foundation for that court's decision in *Duckworth*. Further, as will be shown, Hirter's statements accurately described Missouri law.

■ Section 600.048.1 requires the persons therein designated to provide a written, posted notice of the warnings required under *Miranda*, describing the procedure by which a person who wishes to obtain an attorney may do so. For the reasons that follow, we do not agree with Bittick, how-

ever, that Section 600.048.1 imposes a responsibility in Missouri for the immediate appointment of a lawyer. The statute does not establish substantive rights greater than those announced in *Miranda*. Nor do we agree with appellant's assertion that the failure of Detective Hirter to provide the information required under Section 600.048.1 rendered his confession per se "unknowing and involuntary."

First, the statute imposes no affirmative duty on an interrogating officer to inform a detainee of procedures for contacting the public defender's office. The statute merely requires the posting of a notice "in a conspicuous place" providing the information required by the statute. The notice serves two functions. First, it tells a person under custody of his rights under Miranda. These are essentially the same rights as those provided in the oral notice given by police as a matter of course. Second, the notice tells of the procedure by which the person in custody may contact counsel, should he or she desire an attorney during interrogation. But to repeat: the statute requires no additional act beyond posting the notice.

Second, the statute imposes no obligation on the part of the state to provide an attorney immediately. Indeed, the information contained in the statutory notice is designed to permit the person held in custody "to call to request that a person designated by the state public defender's system visit and interview him." Section 600.048.-1(3). Thus, Hirter's statement to the appellant that "if you want an attorney at this time, it would be your responsibility to contact one" accurately reflected Bittick's duty under Section 600.048.1(3).

Third, the Constitution, through the Sixth Amendment, attaches the right of counsel to the institution of adversarial judicial proceedings. "In all criminal *prosecutions*, the accused shall enjoy the right … to have the assistance of counsel for his defense." U.S. Const., amend. VI (emphasis added); *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). Though we are uncertain of the breadth of Bittick's point, it appears to argue for an extension of the Sixth Amendment right to counsel to the Fifth Amendment context of custodial interrogation. He urges that Section 600.048.1 extends the right to counsel under Missouri law to the suspicion stage and that failure to provide that counsel "immediately" renders any subsequent confession both involuntary and unknowing.

Despite their lack of textual foundation, *Miranda* warnings are designed "to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974). Counsel requested under *Miranda* are not counsel appointed for Sixth Amendment purposes; *Miranda* counsel serve to assist the detainee in preserving his or her rights against self-incrimination. "The denial of the defendant's request for his attorney thus undermined his ability to exercise the privilege—to remain silent if he chose or to speak without any intimidation, blatant or subtle. The presence of counsel … would insure that statements made in the government-established atmosphere are not the product of compulsion." *Miranda*, 384 U.S. at 466, 86 S.Ct. at 1623.

We do not find in the language of Section 600.048.1 any legislative intent to require court appointed counsel at the custodial interrogation stage of a criminal investigation. The statutory notice is no broader than *Miranda*. It advises a person under custodial interrogation of the right to have an attorney present for questioning and provides information by which a detainee may contact an attorney.

Where, as here, the detainee initiates the exchange leading to his confession, the relevant inquiry remains whether that confession is voluntary and founded on a knowing and voluntary waiver of Fifth Amendment rights. *Miranda*, 384 U.S. at 475, 86 S.Ct. at 1628. This view is consistent with this Court's interpretation of the duties of law enforcement authorities under *Miranda*. The police are required to advise a defendant of his rights but "leave it to him to claim these rights. They [the police] have no duty to counsel him as to the course of

action which is wisest from his own standpoint." *State v. Lytle*, 715 S.W.2d 910, 917 (Mo. banc 1986) (Blackmar, J., concurring).

Finally, under Missouri law, the appointment of counsel by the court occurs at the time of charging. Rule 31.02; Section 545.-820, RSMo 1986. Thus, Hirter's statement to Bittick that he could request the court to appoint counsel for him if he were charged with a crime accurately states the law.

We reject Bittick's claim that Detective Hirter's responses to his inquiry either violated Section 600.048.1 or rendered his confession inadmissible because involuntary. Hirter's statements to Bittick technically conform to Missouri law. Moreover, despite Detective Hirter's assurances to Bittick that he was not required to answer questions, Bittick proceeded to confess the crime. Although we find no basis for Bittick's claim under Section 600.048.1, and deny his second point, the question whether Bittick's confession was voluntary and the product of a knowing and intelligent waiver of his right against self-incrimination remains. We turn to that issue now.

### C.

■ Appellant's third point claims that his waiver of his right to counsel and to remain silent was not voluntary, intelligent or knowing as a result of his intoxication, delirium tremens, and low level of education. Under the decisions of the United States Supreme Court, interpreting *Miranda*, "waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'" *Edwards*, 451 U.S. at 482, 101 S.Ct. at 1884 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

For purposes of determining the voluntariness of confessions under the Fifth Amendment, the Supreme Court "has retained [a] due process focus." *Colorado v. Connelly*, 479 U.S. 157, 163, 107 S.Ct. 515, 519, 93 L.Ed.2d 473 (1986). Thus, "a defendant's mental condition, by itself and apart from its relation to official coercion, [does not] dispose of the inquiry into constitutional 'voluntariness.'" *Id.* at 164, 107 S.Ct. at 520. "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Id. at 167, 107 S.Ct. at 520.

There is simply no evidence on this record of any police coercion, intimidation, or withholding of food, water, or other physical needs from Bittick. The trial court did not err in finding the confession voluntary.

■ The more difficult question in this case is whether Bittick's confession was the product of the knowing and intelligent waiver of his constitutional rights. Bittick claims that his mental capacity was insufficient to permit a constitutionally valid waiver as a result of intoxication, delirium tremens and his low level of education.

The trial court found that Bittick's statement was "freely and voluntarily given." This conclusion, however, speaks only to the freedom of will with which Bittick acted. It is silent as to whether the waiver was both knowing and intelligent. Absent a finding of whether Bittick's confession rested on a knowing and intelligent waiver, Bittick's claim that his confession was not constitutional cannot be fully considered. The trial court's failure to determine whether Bittick's confession was knowing and intelligent mandates reversal and remand for consideration of that issue. We thus need not address appellant's final point.

### III.

The judgment of the trial court is reversed and remanded for a determination of whether appellant's confession was the product of a knowing and intelligent waiver of his Fifth Amendment rights and for such further proceedings as may be appropriate thereafter.

BLACKMAR, C.J., RENDLEN, HIGGINS, COVINGTON, HOLSTEIN, JJ., and CRIST, Special Judge, concur.

BILLINGS, J., not sitting.