STATE of Missouri, Plaintiff–
Respondent,

v.

Gary A. COOKS, Defendant–Appellant.

Gary A. COOKS, Movant,

v.

STATE of Missouri, Respondent.

Nos. 60984, 62732.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 7, 1993.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant, Gary Cooks, appeals from his judgment of conviction by jury for robbery in the first degree, § 569.020, RSMo 1986. The St. Louis County Circuit Court sentenced defendant as a prior offender, §§ 558.016, 557.036.4, RSMo 1986, to serve a twenty-year term of imprisonment. We affirm.

Defendant raises four points on appeal: (1) defendant claims the trial court erred in failing to suppress his confession to police officers, because the police officers acquired his confession in violation of his Miranda right to counsel; (2) defendant alleges the trial court erred in admitting the victim's in-court identification of defendant, because the identification was tainted by an impermissibly suggestive pretrial photographic lineup procedure; (3) defendant challenges the constitutionality of the "reasonable doubt" instruction modeled on MAI–CR3d 302.04; and (4) defendant avers the motion court clearly erred in denying his Rule 29.15 motion for ineffective assistance of counsel.

### Facts

On August 15, 1989, defendant ordered two Domino's pizzas to be delivered to him at his mother's house. When the pizza deliverer arrived, defendant stalled for over five minutes and then forcibly stole the two pizzas: pointing a gun, defendant instructed the victim to leave the pizzas with him and to return to the car without looking back.

The victim heeded defendant's instructions, drove back to the pizza store, and contacted the police. Based on the victim's description of the criminal and on information from neighbors at the scene of the crime, police officers issued a "wanted" for defendant.

Police officers arrested defendant on December 9, 1989. After being advised orally and in print of his Miranda rights, defendant gave a detailed confession of the crime both verbally and in writing. He admitted that he pointed a tear gas gun at the victim and stole the pizzas. In addition, he averred that the gun was concealed in the garage.

When asked, defendant told the police he had hidden the tear gas gun behind a beam in the ceiling of his mother's garage. In retrieving the gun, the police officers first obtained the consent of defendant's mother to search her garage. The police officers,

accompanied by defendant, found the gun in the exact spot where it had been described.

## I. Miranda Right to Counsel

Defendant claims the trial court erred in failing to suppress his pretrial confession, because police officers elicited his confession after defendant arguably invoked his Miranda right to counsel. Defendant claims that he arguably invoked his right to counsel by signing a "Miranda Warning & Waiver" form in two places: (1) on the appropriate signature line to indicate waiver; and (2) on the appropriate signature line to confirm an invocation of various Miranda rights. We disagree with defendant's contention, and affirm the trial court's order.

On a motion to suppress evidence, we review the facts and reasonable inferences therefrom in the light most favorable to the trial court's ruling, and disregard all contrary evidence and inferences. *State v. Bittick*, 806 S.W.2d 652, 654 (Mo. banc 1991). We limit our review to see if sufficient evidence existed to sustain the trial court's finding, *Id.*, and give deference to the trial court's superior opportunity to determine the credibility of witnesses. *State v. Whittle*, 813 S.W.2d 336, 338 (Mo.App.W.D.1991).

The Fifth Amendment prohibition against compelled self-incrimination offers an accused the right to have counsel present during custodial interrogation. *State v. Gill*, 806 S.W.2d 48, 51 (Mo.App.W.D.1991). If an accused expresses his or her desire to deal with police exclusively through counsel, police interrogation must cease until counsel is made available. *Id.* Even if the accused invokes the right to counsel, a waiver can be established by showing the accused initiated further communication, exchange, or conversation with the police, but cannot be established merely by showing the accused responded to further police-initiated custodial interrogation. *State v. Figgins*, 839 S.W.2d 630, 636 (Mo.App.W.D.1992).

To decide defendant's claim, we first inquire whether defendant actually invoked the right to counsel. *State v. Reese*, 795 S.W.2d 69, 72 (Mo. banc 1990). Defendant must have specifically requested coun-

sel; the mere mention of counsel would not have been sufficient. *Gill*, 806 S.W.2d at 51.

We reject defendant's charge that his two signatures on the "Miranda Warning & Waiver" form denoted a sufficient invocation of his right to counsel. Defendant testified that he had signed the form without reading it, therefore, we disregard whatever cogency the form may have had on the issue of waiver or invocation. Consequently, we will determine waiver from all the circumstances surrounding the interrogation. *State v. Garrette*, 699 S.W.2d 468, 497 (Mo.App.S.D.1985).

The police officers adequately informed defendant of his Miranda right to counsel. Defendant understood that right. During custodial interrogation, defendant never verbally indicated that he wanted to talk to a lawyer or to invoke his right to counsel. When invited to talk about the robbery, defendant gave a detailed oral and then a written confession. No coercion or promises were used to elicit defendant's confession. We find this evidence sufficient to sustain the trial court's order overruling defendant's motion to suppress his written confession. Defendant's first point is denied.

## II. In–Court Identification

Defendant alleges the trial court erred in admitting the victim's in-court identification of defendant, because the in-court identification was tainted by an impermissibly suggestive pretrial photographic lineup procedure. Defendant claims that a very substantial likelihood of irreparable misidentification existed, because, of the approximately twenty photographs shown, only a photo of defendant featured a man wearing glasses, and because the victim had told the police that the one thing she remembered about the robber was the glasses, and how his eyes appeared with them on. We disagree with defendant's allegation, and affirm the trial court's decision.

Once again, when reviewing a trial court's order on a motion to suppress evidence, we state the facts and reasonable inferences favorably to the order challenged on appeal, and may disregard any facts to the contrary. *Bittick*, 806 S.W.2d at 654. The trial court's

ruling shall be affirmed if we find sufficient evidence in the record to support it. *Id.*

Utilization of photographs can properly aid the identification or release of suspects in a police investigation. *State v. Higgins,* 592 S.W.2d 151, 159 (Mo. banc 1979), *overruled on other grounds by Kuyper v. Stone County Comm'n,* 838 S.W.2d 436 (Mo. banc 1992). " 'Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs.' " *Id.* (citation omitted).

In determining the admissibility of identification testimony, we apply a two pronged analysis: (1) Were the pretrial investigative procedures impermissibly suggestive? and if so, (2) what impact did the impermissibly suggestive procedures have upon the reliability of the in-court identification. *State v. Fitzgerald,* 781 S.W.2d 174, 183 (Mo.App. E.D.1989). "Reliability, rather than suggestiveness, is the linchpin in determining the admissibility of identification testimony." *Id.* (citation omitted).

The reliability of an in-court identification will be assessed under the totality of the circumstances, while considering five factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness's prior description of the criminal; and (5) the length of time between the crime and the confrontation. *Higgins,* 592 S.W.2d at 160.

■ Dissimilarity in physical appearance, alone, is insufficient to establish impermissible suggestion. *See State v. Reasonover,* 700 S.W.2d 178, 182 (Mo.App.E.D.1985). "It is not required that in such a lineup all distinguishing features of the subjects be obscured. 'That one among the array is marked by a physical feature more prominent than that of any other ... does not necessarily invalidate an otherwise fairly induced identification.' " *State v. Carter,* 691

S.W.2d 417, 418 (Mo.App.S.D.1985). Further, if the defendant has some type of inherent physical abnormality or distinctive appearance, no lineup or photo array can be expected to provide subjects reasonably close in appearance. *See State v. Haymon,* 639 S.W.2d 843, 845 (Mo.App.E.D.1982). We require only reasonable efforts of police investigators to find physically similar participants for a photographic lineup. *See State v. Cooper,* 708 S.W.2d 299, 305 (Mo.App.E.D.1986).

■ In the present case, two police officers compiled approximately twenty photographs for the victim to view. Searching through hundreds of pictures, the police officers attempted to select photos of men who fit the description of the criminal. Except for the one photo of defendant, the officers could find no other photographs of men wearing glasses who also fit the description of the criminal. Therefore, to minimize any suggestiveness, the officers placed one picture of defendant with glasses and one picture of defendant without glasses, in the photo array. The victim quickly identified both pictures of defendant as portraying the man who robbed her. She said that the photos of defendant looked exactly like the man who robbed her: "His eyes stuck out more than anything else"; defendant had distinctively crossed-eyes. We find that sufficient evidence existed to support the finding that the officers took reasonable efforts to find photographs of physically similar men, and that no impermissible suggestion existed in the pretrial identification procedure.

■ Even if the pretrial identification procedure was impermissibly suggestive, we find the in-court identification to be reliable, and, therefore, admissible. The victim viewed the criminal at an arm's length for over five minutes. With an unobstructed view of the criminal, the victim could see the criminal's face clearly. Moreover, defendant accurately fits the victim's prior description of the criminal. The victim also evinced a great degree of certainty in her identification of defendant, as she stated that defendant looked exactly like the criminal, especially with his crossed-eyes. Therefore, we find that the evidence above, along with defendant's detailed con-

fession, constituted sufficient evidence to support the reliability and admissibility of the victim's in-court identification. Consequently, we deny defendant's second point.

### III. "Reasonable Doubt" Instruction

 Defendant challenges the "reasonable doubt" instruction modeled on MAI–CR3d 302.04. He claims that the portion of the instruction defining "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of defendant's guilt" lowers the state's burden of proof below that required by due process. We disagree.

The identical challenge that defendant puts forth has been consistently and repeatedly denied by the Missouri Supreme Court. *State v. Ervin,* 835 S.W.2d 905, 924 (Mo. banc 1992); *State v. Blankenship,* 830 S.W.2d 1, 13 (Mo. banc 1992); *State v. Antwine,* 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). We deny point three.

### IV. Ineffective Assistance of Counsel

 Defendant claims the motion court clearly erred in denying his Rule 29.15 motion for ineffective assistance of counsel, because defense counsel failed to call his mother to testify at the hearing on defendant's motion to suppress evidence. Defendant's mother attests that the police officers coerced her into consenting to the police search of her garage. We affirm the motion court's decision.

In reviewing a court's denial of a Rule 29.15 motion, we are limited to a determination of whether the court's findings and conclusions are clearly erroneous. Rule 29.15(j); *Antwine v. State,* 791 S.W.2d 403, 406 (Mo. banc 1990), *cert. denied,* 498 U.S. 1055, 111 S.Ct. 769, 112 L.Ed.2d 789 (1991). We will deem a motion court's findings and conclusions clearly erroneous only when, after reviewing the entire record, we are left with a definite and firm impression that a mistake has been made. *Antwine,* 791 S.W.2d at 406. Moreover, we defer to the motion court's determination of the credibility of witnesses. *Kayser v. State,* 784 S.W.2d 820, 821 (Mo. App.E.D.1990).

The motion court expressly found defendant's mother's testimony to be not credible. In addition, defendant's mother did not inform defense counsel of her allegation, prior to the suppression hearing. On review of the entire record, we find the trial court did not clearly err in denying defendant's motion. Point four is denied.

Judgment AFFIRMED.

SIMON, P.J., and STEPHAN, J., concur.