STATE of Missouri,
Plaintiff-Respondent,

v.

Adrian Jerome VERSCHUEREN,
Defendant-Appellant.

No. KCD 30544.

Missouri Court of Appeals,
Western District.

March 3, 1980.

Cullen Cline, Columbia, for defendant-appellant.

John Ashcroft, Atty. Gen., Richard F. Engel, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

Defendant was convicted upon jury trial in the Circuit Court of Cole County of the offense of second-degree murder. From the judgment of conviction and sentence of 25 years' imprisonment in the Department of Corrections the defendant has appealed to this court.

Defendant had earlier been tried for the same offense in the Circuit Court of Boone County. That trial resulted in a mistrial upon the failure of the jury to agree upon a verdict. Defendant's only claim of error on this appeal is that the second trial upon the same charge violated the defendant's Fifth Amendment rights under the Constitution of the United States in that he was exposed to double jeopardy by the second trial.

Only the briefest statement of facts is necessary for our purposes.

Defendant, according to his account, found his wife, Shirley, dead in her bed in the early morning hours of December 6, 1977. There were numerous bruises on her head, neck and torso. The cause of death was ultimately determined to be manual strangulation.

Defendant and his mother were present at the house when the police officers arrived. Defendant's face was scratched. In a statement to the police, defendant said that Shirley had assaulted him and cursed him when he had arrived home the previous evening; that she "kept hitting the walls and slapping herself and trying to pull her hair out. Shirley tore her clothes off and went and got in bed." He stayed in the front room and watched TV. "I could hear Shirley having trouble breathing in the bedroom", he said, but stated that he did not go into the bedroom. He went to sleep on the couch, according to his statement. When he woke up sometime during the morning he found Shirley dead in the bed. He first called his mother, who lived nearby, then called the police. He stated that he had not killed his wife.

Defendant, before the Cole County trial which resulted in his conviction, filed a motion to dismiss the charge against him because of an earlier trial which had taken place in the Circuit Court of Boone County, and which, as earlier stated, had resulted in a mistrial upon the failure of the jury to agree upon a verdict. This motion was overruled, and the action of the court in overruling said motion is assigned as error here.

We have a very meager record of the circumstances surrounding the discharge of the jury of the first trial. In a case where the "totality of circumstances" surrounding this act must be examined to determine the question raised by the appellant, we are at a considerable disadvantage. The total record is as follows:

"THE COURT: Bring the jury in, Mr. Bailiff."

"(Thereafter the jury returned to the courtroom)

"THE COURT: All right, Mr. Conrad, if you would deliver the Court's Instructions and the verdict forms to the Bailiff, if you please, sir. All right, the Court at this time will inform all persons present in the Courtroom that when the note from the jury is read there will be no demonstrations or disturbance or outcry. All persons present in the Courtroom will remain present and in the Courtroom quietly until the jury has cleared the Courthouse. The Bailiff will escort the jury to the first floor and will then return and inform the Court that the Bail . . . the jury has cleared the Courthouse at which time the Court will then recess. To the jury the Court would say, you will remember that at each recess the Court instructed you that you were not to discuss the case with anyone or let anyone discuss it in your presence. That restriction is now lifted and you may, if you wish, discuss the case with anyone. You are not required to, you cannot be compelled to do so but if you do wish you are at liberty to discuss the case with anyone that may be interested in it. The note which was handed to the Court is as follows: A vote was taken, the results were eleven guilty in the Second Degree, one not guilty of Second Degree, we are at an impass (sic), a unanimous verdict cannot be reached. The Court will therefore declare . . . signed Gary L. Conrad, Foreman. The Court will therefore declare a mistrial. Members of the jury, you are excused at this time until you are further notified by the Bailiff. Thank you very much for your attendance and your service in this matter.

You are now excused, the Bailiff will escort you to the first floor.

"(Thereafter the jury was excused from the courtroom)"

The court's contemporaneous docket entry, insofar as it relates to the matter at hand, says:

"Jury retires at 8:17 p. m. to consider its verdict. At 10:27 p. m. Court, on own motion, gives Missouri Approved Instruction, Criminal 1.10 Instruction and jury retired for further deliberation. At 11:17 p. m. the jury informs the Court that they are unable to reach a verdict. A mistrial declared, jury discharged."

▌ The principles governing the determination of the issue before us are well settled and are agreed upon by the parties. A defendant has the right to have his guilt or innocence decided by the present forum. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). However, an earlier trial, aborted by the trial court on the ground of the failure of the jury to reach a verdict, does not preclude a subsequent trial if "there is manifest necessity for the act, or the ends of public justice would otherwise be defeated". *U. S. v. Perez*, 22 U.S. 579, 580, 9 Wheat. 579, 6 L.Ed. 165 (1824).

▌ It has long been established that a jury's genuine inability to agree on a verdict constitutes "manifest necessity" warranting the declaration of a mistrial. As Judge Feinberg wrote in *U. S. v. Goldstein*, 479 F.2d 1061, 1068 (2d Cir. 1973):

"Requiring a jury to continue deliberations despite genuine and irreconcilable disagreement more often than not defeats the ends of public justice; not only will such compulsion needlessly waste valuable judicial resources, it may coerce erroneous verdicts."

In determining when a mistrial is to be declared when a deliberating jury fails to reach a verdict, the trial court is necessarily vested with a very wide discretion. The trial court is in the best position to consider the total circumstances and no single factor is decisive. *Arizona v. Washington*, 434

U.S. 497, 509–510, 98 S.Ct. 824, 832–833, 54 L.Ed.2d 717 (1978); *Gori v. United States*, 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961); *Wade v. Hunter*, 336 U.S. 684, 691, 69 S.Ct. 834, 838, 93 L.Ed. 974 (1949); *State v. Summers*, 362 S.W.2d 537, 540–1 (Mo.1962); *State v. Burton*, 355 Mo. 792, 198 S.W.2d 19, 22 (1946); ABA Project on Minimum Standards for Criminal Justice, Trial by Jury, § 5.4(c).

During the pendency of this appeal, the Supreme Court of Missouri has handed down *State of Missouri v. Holt*, 592 S.W.2d 759 (1980), which considered and rejected a double jeopardy claim in a factual situation very much like the one now before us. That case is controlling in the present case, and rules appellant's point adversely to him.

In *Holt*, the foreman of the jury in the earlier trial had announced that the jury stood nine to three in favor of conviction. In holding that the mistrial was a manifest necessity, and denying defendant's double jeopardy plea, Judge Seiler said: "Knowing that the jury was nine to three against the appellant, for the court to return them for further deliberation would be a clear signal that the judge, who knew how they stood, thought they were on the right track. It would inevitably make appellant's three jurors doubtful and apprehensive about continuing to hold out . . . Under the circumstances before him, the only way the court could avoid showing favoritism to the state was to declare a mistrial . . ." In our case, the judge had been informed, by a note from the jury, that the jury was eleven-to-one for conviction of second-degree murder.

It is unlikely that the court's declaration of a mistrial cost the defendant a favorable verdict. It seemed to be tending the other way, with the vote standing eleven-to-one on the side of conviction of second-degree murder. This factor was present also in *Holt*, and was noted by the court.

In view of the disposition we have made on the merits of defendant's double jeopardy claim, it is not necessary to rule the state's contention that defendant waived the same by failing to object to the mistrial.

The state made a similar argument in *Holt*. The argument was rejected by the Supreme Court. The opinion says: "We do not believe it would be fair to make this disposition, which would have compelled counsel to take a desperate chance. The foreman's disclosure that the jury stood nine-to-three in favor of guilty left counsel, through no fault of his own, where if he objected to a mistrial and were sustained, the likely outcome of further deliberation would be a verdict adverse to his client. Failure to object under these circumstances was not a waiver of double jeopardy."

The judgment is affirmed.

All concur.