**STATE of Missouri, Respondent,**

**v.**

**Charles D. WILHELM, Appellant.**

**No. WD 40918.**

Missouri Court of Appeals,
Western District.

July 11, 1989.

Melinda K. Pendergraph, Columbia, for appellant.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and CLARK and FENNER, JJ.

FENNER, Judge.

Appellant Charles D. Wilhelm appeals his convictions for assault in the first degree and assault in the second degree. Appellant was convicted after trial by jury and sentenced in accordance with the jury's verdicts to consecutive terms of ten years' imprisonment and two years' imprisonment respectively.

In this case, appellant was charged in Count I of the information as follows:

> Charles D. Wilhelm, or another person with whom he acted with the purpose of promoting or furthering the commission of an assault in the first degree, did, in violation of Section 565.050, RSMo, commit the Class A felony of assault in the first degree, punishable upon conviction under Section 558.011.1(1), RSMo, in that on or about the eighteenth day of January, 1988, in the County of Buchanan, State of Missouri, the defendant, or another person with whom he acted with the purpose of promoting or furthering the commission of said assault, knowingly caused serious physical injury to Judith T. Wells by shooting her.

The second count charged against appellant was:

> Charles D. Wilhelm, or another person with whom he acted with the purpose of promoting or furthering the commission of assault in the second degree, did, in violation of Section 565.060, RSMo, commit the Class C felony of assault in the second degree, punishable upon conviction under Section 558.011.1(3) and [Section] 560.011, RSMo, in that on or about the eighteenth day of January, 1988, in the County of Buchanan, State of Missouri, the defendant, or another person with whom he acted with the purpose of promoting or furthering the commission of said assault, knowingly caused serious physical injury to Francis L. Wells by means of a deadly weapon.

Judith Wells and Francis Wells had been husband and wife until their divorce in June of 1987. Prior to their divorce being finalized, Judith and Francis Wells separated in February of 1986. There were two girls born to the marriage of Judith and Francis Wells. At the time of trial, June of 1988, the girls were ages nine and thirteen and they had lived with Judith Wells continuously.

Viewed in the light most favorable to the State, the following facts were adduced at

trial. After her separation from Francis, Judith Wells began to date appellant. Appellant and Judith Wells began living together in her house at 1812 Jones Street, St. Joseph, Missouri, in April, 1987. Judith Wells and appellant lived together until November of 1987 and during that time appellant and Francis Wells had several confrontations. Appellant and Francis Wells argued over the way appellant was disciplining the Wells' children. Francis Wells also accused appellant of making inappropriate sexual advances toward the children and appellant disliked Francis Wells because he believed Francis Wells had molested one of his own daughters.

During the time Judith Wells and appellant lived together Judith heard appellant make threats toward Francis Wells. Appellant threatened to beat Francis up and to "blow him away". When Judith and appellant broke up in November of 1987, appellant said "it would be fun watching [Francis] go down". Appellant also said "If I can't have [Judith], no one else will," and that "he'd do anything in his power to stop [Judith and Francis] from ever getting back together". After Judith Wells and appellant stopped living together her ex-husband Francis moved back in with her and their children at 1812 Jones.

In December of 1987 appellant initiated a series of conversations with Joyce and Richard Dreher[1]. Appellant told the Drehers in their first conversation that a little girl had been molested and that the man who had molested the child needed to be "taken care of". According to the Drehers, appellant said that the man needed to be taken care of late at night because he was a truck driver[2]. Appellant told the Drehers that "he wanted the man hurt".

Around the first of January, 1988, appellant called the Drehers on the telephone. Appellant said "he wanted the man hurt", he said "put him away". The Drehers told appellant that they didn't want any part of what he was proposing. Shortly after their second conversation appellant contacted the Drehers again asking for their help. During the course of their conversations appellant told Joyce Dreher that "he did not want the woman hurt". Appellant referred to the woman as Miss Judith and said that he had a prior relationship with Miss Judith. Appellant said Miss Judith had gone back with her husband and appellant didn't want the daughter back with them because he accused the father of sexually molesting the little girl.

On December 31, 1987, New Year's Eve, appellant called the Dreher home two or three times and sounded "like he was really upset." He said he wanted the man "put away", "blown away", "killed". Appellant said tonight needed to be the night because the man would be leaving with his truck. The Drehers testified that they consistently told appellant they didn't want any part of his plan. After New Year's Day appellant called the Drehers again and told Joyce Dreher that "it was going to be taken care of" and asked if she knew anyone else who could help him since the Drehers would not help.

On January 17, 1988, Judith Wells finished working at approximately 11:45 p.m. and drove home with her ex-husband. Upon arriving home they stayed up and watched television until they went into her bedroom. Once in her bedroom Judith lay on the bed and Francis sat on the floor at the foot of the bed. They talked for about thirty minutes and at approximately 3:15 a.m. they heard an explosion near one of the bedroom windows.

Judith and Francis had both been shot. Judith had multiple pellet wounds to the right side of her body and injuries to her chest, abdomen and right leg. A medical expert testified that the injuries sustained by Judith presented a substantial risk of death. Francis Wells had seven flesh wounds in his right shoulder and arm. Immediately after the shot Judith heard a gasp, which she described as a sharp intake of air, from outside the bedroom window. Judith stated that the gasp sounded like a

1. The Drehers appeared as witnesses on behalf of the State.

2. Francis Wells was a truck driver.

gasp that appellant had made before when he was aggravated or tired.

The significant events immediately surrounding the shooting of Judith and Francis in the early morning hours of January 18, 1988, can most clearly be set forth chronologically as follows:

*Thursday, January 14, 1988*—Margaret Weaver, a neighbor of Judith Wells, got out of bed at 4:00 a.m. to go to the bathroom. Mrs. Weaver observed appellant's car in the alley directly behind the Wells' house. Mrs. Weaver observed the car sitting in the alley for approximately ten minutes. Appellant was behind the wheel of the car and he was alone. Appellant was looking at Mrs. Weaver and he passed her as he left the alley.

*Saturday, January 16, 1988, or early morning hours of Sunday, January 17, 1988*—Appellant told Joyce Dreher that "it was all going to be taken care of," "it was done," "he was going to do it himself." The testimony was conflicting as to the exact date appellant made these statements to the Drehers. At one point it was said to be on Saturday and it was also said to have been the day before the shooting which would have been Sunday. The Drehers worked at a night club and these comments were made to Joyce Dreher as she was walking to her car in the parking lot at the night club.

*Sunday, January 17, 1988, a.m.*—Between midnight of January 16 and 1:00 a.m. of January 17, Mrs. Weaver was taking some trash outside and once again she saw appellant's car parked in the alley directly behind the Wells' home. She also observed appellant walking around the backyard of the Wells' house.

*Sunday, January 17, 1988, p.m.*—At 11:45 p.m., Judith Wells got off work and drove home with her ex-husband. Judith Wells testified that appellant's car followed them home and stopped four to five houses down the block.

*Monday, January 18, 1988*—Judith and Francis Wells were shot at approximately 3:15 a.m. Joyce Dreher testified that the day the shooting took place appellant told her he wanted the man "blown away."

*Thursday, January 21, 1988*—Mrs. Weaver testified that around January 21, 1988 at 2:00 or 2:30 a.m. she saw appellant's car in front of her house. She saw that there was someone in appellant's car but she wasn't able to see who it was.

*Friday, January 22, 1988*—Mrs. Weaver heard a noise "like somebody opening a car door or shutting it" at around 1:30 or 2:00 a.m. When she looked out her window she saw appellant's car in front of her house. At 8:00 a.m. Mrs. Weaver went outside and saw writing on the wall of her porch that wasn't there when she went to bed. The writing said "Keep your mouth shut."

In his first point on appeal appellant argues the trial court erred by overruling his motion for judgment of acquittal at the close of all the evidence. Appellant argues the evidence was insufficient to show that he committed the offenses of assault in the first degree or assault in the second degree, either acting alone or with another.

An appellate court when reviewing a challenge to the sufficiency of the evidence, in a criminal case, must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences to be drawn from the evidence and must disregard any contrary evidence and inferences. *State v. Mallett,* 732 S.W.2d 527, 530 (Mo. banc 1987), cert. denied, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987).

The appellant court does not weigh the evidence, but limits the scope of its review to a determination of whether the verdict is supported by substantial evidence. *State v. Mayes,* 654 S.W.2d 926, 928 (Mo.App. 1983). Substantial evidence means evidence from which the trier of facts reasonably could find the issue in harmony therewith. *Id.* at 928.

When the evidence is circumstantial, the facts and circumstances shown must be consistent with each other and with the defendant's guilt, and must be inconsistent with every reasonable hypothesis of defendant's innocence. *State v. Rodden,* 728 S.W.2d 212, 213 (Mo. banc 1987). How-

ever, to uphold a conviction, the circumstances do not need to be absolutely conclusive of guilt or show the impossibility of innocence; mere existence of some other hypothesis is not enough to take the case away from the jury. *Id.*

Viewed in the light most favorable to the State there is substantial evidence consistent with appellant having committed the assaults on Judith and Francis Wells. Appellant threatened to do exactly what he was convicted of doing on numerous occasions. Appellant and his car were repeatedly seen in the vicinity of the Wells' residence in the early morning hours of the days before and after the shooting at the same approximate time as when the shooting occurred.

It is reasonable to infer under the circumstances of this case that when appellant was unsuccessful in securing another to commit the crime for him he went to the Wells' house in the early morning hours before the day of the shooting to determine their habits, survey the area and perfect a plan to carry out his threats. It is likewise consistent with his guilt that appellant followed the Wells' home the night of the shooting after he had said that "he was going to do it himself." The fact that appellant's car was seen at the scene of the crime in the days immediately following the crime, at the same approximate time as when the crime occurred, is also consistent with the other facts establishing his guilt.

Mrs. Weaver had observed appellant at the scene of the crime, in the early morning hours of the days immediately preceding the crime. Mrs. Weaver and appellant were both outside and on one occasion he looked at her and drove by her. It is reasonable to infer from the facts of this case that appellant, knowing Mrs. Weaver had seen him, left the message on the wall of her porch in an effort to cover up his crime by attempting to stop Mrs. Weaver from providing evidence against him.

There was substantial evidence of facts and circumstances consistent with each other and with appellant having been guilty of assaulting Judith and Francis Wells. The facts and circumstances were likewise inconsistent with any reasonable hypothesis of appellant's innocence. Therefore, appellant was not entitled to a judgment of acquittal at the close of all the evidence.

In his second point appellant argues the trial court erred in submitting erroneous verdict directing instructions which hypothesized that either appellant or another committed the elements of assault.

The verdict directing instruction on first degree assault was in accordance with MAI–CR 3d 304.04 and 319.02. In pertinent part it directed as follows:

> A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with him or with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.
>
> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about the 18th day of January, 1988, in the County of Buchanan, State of Missouri, the defendant or another person knowingly caused serious physical injury to Judith T. Wells, by shooting her,
>
> then you are instructed that the offense of assault in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
>
> Second, that with the purpose of promoting or furthering the commission of that assault in the first degree, the defendant acted together with or aided another person in committing that offense,
>
> then you will find the defendant guilty under count I of assault in the first degree.

The verdict directing instruction for assault in the second degree was in accordance with MAI–CR 304.04 and 319.12. In pertinent part it directed as follows:

> A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with him or with the common purpose of committing that offense, or if, for the purpose of commit-

ting that offense, he aids or encourages the other person in committing it.

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 18th day of January, 1988, in the Count of Buchanan, State of Missouri, the defendant or another person knowingly caused physical injury to Francis L. Wells, by means of a deadly weapon,

then you are instructed that the offense of assault in the second degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Second, that with the purpose of promoting or furthering the commission of that assault in the second degree, the defendant acted together with or aided another person in committing that offense,

then you will find the defendant guilty under Count II of assault in the first degree.

Instructions must be based upon substantial evidence and reasonable inferences drawn therefrom. *State v. Reed,* 670 S.W.2d 545, 547 (Mo.App.1984). Instructions should not be given in the absence of evidence to support them. *State v. Daugherty,* 631 S.W.2d 637, 639 (Mo.1982). A faulty jury instruction is grounds for reversal only if the defendant has been prejudiced by the application of that instruction. *State v. McCuin,* 731 S.W.2d 305, 306 (Mo. App.1987).

In the case at bar the disjunctive submission which allowed the jury to find that either appellant or another shot the victims was error because there was insufficient evidence that another shot them. There was insufficient evidence to show that appellant had an accomplice in the commission of the crime. To the contrary, the State's evidence showed that the appellant attempted unsuccessfully to obtain the assistance of an accomplice. When appellant was not able to obtain the Drehers' assistance, he stated that he would commit the crime himself.

There was no evidence to show that appellant had an accomplice in surveying the scene of the crime prior to its occurrence. Appellant's car followed the Wells home the night of the crime. Appellant's car was the one observed the night that Mrs. Weaver was left a pointed message on her porch wall and appellant was the one with a motive to leave such a message for Mrs. Weaver.

There was insufficient evidence to instruct the jury that they could find appellant guilty if they found that he or another person assaulted Judith and Francis Wells. Furthermore, appellant was prejudiced by the verdict directing instructions.

The prejudice to the appellant, in the case at bar, is best illustrated by closing argument in which the State emphasized the verdict directing instructions. The assistant prosecutor argued that:

If you find that he [appellant] did pull the trigger, he's guilty. But if you find he wasn't necessarily the one that pulled the trigger, he's still guilty also.

He continued:

Whether he pulled the trigger or not, you can still find him guilty.

He also argued:

... I don't want anybody here to feel like you could infer from the way the evidence came out that you absolutely had to find beyond a reasonable doubt that [appellant] pulled the trigger.

As shown by the assistant prosecutor's closing argument, the prejudice from the submission of the verdict directing instructions was that the instructions allowed the jury to find appellant guilty as charged even if they did not find that he committed the elements of assault in the first or second degrees and there was insufficient evidence to support the charge that he acted together with or aided another in committing the offense.

Appellant's convictions are reversed and this cause is remanded for a new trial.

All concur.