STATE of Missouri, Respondent,

v.

Oscar TURNER–BEY, Appellant.

No. WD 41862.

Missouri Court of Appeals, Western District.

June 4, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1991.

Application to Transfer Denied Sept. 10, 1991.

Susan M. Hunt, Kansas City, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and LOWENSTEIN, ULRICH and BRECKENRIDGE, JJ.

ULRICH, Judge.

Oscar Turner–Bey was convicted by a jury of second-degree murder (§ 565.021, RSMo 1986)[1] and armed criminal action (§ 571.015) on February 24, 1989. The Circuit Court of Jackson County, Missouri, sentenced Mr. Turner–Bey, as a class X offender, to two consecutive life sentences. Mr. Turner–Bey subsequently filed a Rule 29.15 motion for postconviction relief which was denied following an evidentiary hearing. Mr. Turner–Bey brings this consolidated appeal contending that the convictions and denial of postconviction relief should be reversed. The circuit court's judgment is affirmed.

On December 24, 1987, Oscar Turner–Bey was arrested in Jackson County, Missouri, and charged, by criminal complaint, with first degree murder and armed criminal action. On January 8, 1988, a grand

---

1. All references to Missouri statutes are to the Revised Statutes of Missouri 1986 unless otherwise stated.

jury returned an indictment charging Mr. Turner–Bey with first degree murder and armed criminal action. On December 5, 1988, Mr. Turner–Bey's trial commenced before a jury in the Circuit Court of Jackson County, Missouri. Prior to the trial commencing, on December 5, 1988, the prosecuting attorney filed an amended information in lieu of the prior indictment charging Mr. Turner–Bey, as a class X offender, with first degree murder and armed criminal action.

On December 8, 1988, after four days of trial, the case was submitted to the jury. Following approximately three hours of deliberations, the jury returned to the courtroom and announced that it was deadlocked in a seven-to-four vote with one juror undecided. The trial court sent the jury back to the jury room with instructions that it could continue deliberations or, if the jury believed that further deliberations were hopeless, it could discontinue. After deliberating an additional hour and half, the jury sent a note to the court again indicating that it was deadlocked. Mr. Turner–Bey requested that the court submit MAI–CR 3d 312.10, the "hammer instruction," to the jury. The prosecutor opposed this request. At that time, the jury returned to the courtroom, the court denied Mr. Turner–Bey's request and declared a mistrial.

Mr. Turner–Bey's second trial was scheduled to commence on February 21, 1989. On February 8, 1989, the prosecuting attorney telephoned defendant's counsel and informed him that a new witness would be called at this second trial. The prosecutor refused to disclose the new witness' name at that time but informed Mr. Turner–Bey's attorney that the new witness was an inmate at the Jackson County Jail. On February 10, 1989, the prosecuting attorney again telephoned Mr. Turner–Bey's attorney and revealed the name of the new witness, Roland Allen. On February 16, 1989, the prosecutor produced Mr. Allen for deposition by Mr. Turner–Bey. Mr. Turner–Bey learned the substance of Mr. Allen's testimony for the first time during the deposition.

On February 21, 1989, Mr. Turner–Bey's second trial commenced, and resulted in his conviction. Viewed in the light most favorable to the verdict, the evidence at the second trial revealed that on December 24, 1987, at approximately 1:40 a.m., Philip Richardson was watching television in his bedroom when he heard two gunshots from outside his window. Mr. Richardson turned off the television and bedroom light and looked out the window. Mr. Richardson saw a tall, heavy man standing over a second man lying on his back. Two other individuals were standing near the heavyset man. At this time, Mr. Richardson telephoned the police that a shooting had occurred. When Mr. Richardson hung up the telephone, he observed the heavyset man converse with the two other individuals, grab the person lying on the ground by the collar, and drag him to the back of a pickup truck parked nearby. Mr. Richardson also observed the heavyset man open the passenger door of the pickup truck and place something inside the truck.

Moments later, members of the Kansas City, Missouri, Police Department responded to a dispatcher's call regarding the shooting. The responding officers stopped a pickup truck within blocks of where the shooting occurred. Mr. Turner–Bey was the sole occupant of this pickup truck. One of the officers walked to the back of the truck, discovered blood on the tailgate, looked into the bed of the truck and observed Anise Davis suffering from two gunshot wounds. The officer checked for vital signs but found none. However, subsequent medical testimony established that the victim was alive at this time and continued to live for approximately another hour and fifteen minutes. Police officers present where the truck was stopped also noticed blood on Mr. Turner–Bey's jacket, pants and tennis shoes. A forensic chemist testified at trial that the blood on Mr. Turner–Bey's clothing matched that of the victim, Anise Davis. A large caliber rifle was also found on the passenger side in the cab of the pickup truck. This rifle was subsequently determined to be the weapon that fired the fatal shots killing Anise Davis. Additionally, Roland Allen testified that,

while an inmate in jail with Mr. Turner–Bey, the defendant admitted his involvement in Anise Davis' murder on two separate occasions.

Following this evidence, the trial court submitted the case to the jury. The jury instructions included instructions Nos. 7 and 9. Instruction 7 was a verdict-directing instruction for second-degree murder which encompassed an acting in concert theory of criminal liability. Instruction No. 9 was a verdict-directing instruction for armed criminal action, also encompassing an acting in concert theory of criminal liability. The jury returned verdicts finding Mr. Turner–Bey guilty of second-degree murder and armed criminal action.

Mr. Turner–Bey subsequently filed a Rule 29.15 motion for postconviction relief. The trial court held an evidentiary hearing and denied Mr. Turner–Bey's motion. Mr. Turner–Bey consolidates his direct appeal from the convictions for second degree murder and armed criminal action with his appeal from the circuit court's denial of his Rule 29.15 motion for postconviction relief.

■ For point (1), Mr. Turner–Bey contends the trial court erred in conducting a second trial following the deadlocked jury in his first trial because the second trial violated his constitutional right to be free from double jeopardy. Mr. Turner–Bey argues, in essence, that the first jury's inability to arrive at a verdict demonstrates that reasonable doubt exists as to his guilt. However, "[t]he argument that a jury's inability to agree establishes reasonable doubt as to the defendant's guilt, and therefore requires acquittal, has been uniformly rejected in this country." *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). "Instead, without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial" without violating his constitutional right to be free from double jeopardy. *Id.*

The law is well settled that neither the state nor federal constitution bars a defendant's second trial after a mistrial has been declared as a result of a deadlocked jury in the first trial unless the trial court abused its discretion in declaring the mistrial. *State v. Perry*, 643 S.W.2d 58, 61 (Mo.App. 1982). "[A] jury's genuine inability to agree on a verdict constitutes 'manifest necessity' warranting the declaration of a mistrial." *State v. Verschueren*, 595 S.W.2d 770, 772 (Mo.App.1980). The trial court is in the best position to consider the total circumstances surrounding the jury's deadlock. *Id.* In particular, the length of time which a jury is permitted to deliberate as well as the determination of whether to read MAI–CR 3d 312.10, sometimes called "the hammer" instruction, to a jury are matters committed to the trial court's sound discretion. *State v. Anderson*, 698 S.W.2d 849, 853 (Mo. banc 1985). This court's review is limited to determining whether the trial court abused its discretion. *State v. Williams*, 652 S.W.2d 102, 111 (Mo. banc 1983).

Under the circumstances of this case, the trial court permitted the jury in the first trial to deliberate for four and one-half hours resulting in a deadlock. Additional deliberations could have resulted in "needlessly wast[ing] valuable judicial resources" or may have coerced an erroneous verdict. *Verschueren*, 595 S.W.2d at 772 (*quoting, U.S. v. Goldstein*, 479 F.2d 1061, 1068 (2d Cir.1973)). Under these circumstances, the trial court did not abuse its discretion in declaring a mistrial.

■ Mr. Turner–Bey also contends the second trial violated his constitutional right to be free from double jeopardy because, in the second trial, the State submitted the case on a different theory of criminal liability than presented during the first trial. In the first trial, the prosecutor sought to convict Mr. Turner–Bey only as a principal and the trial court did not instruct the jury on an acting in concert theory of criminal liability. In the second trial, the court submitted instructions Nos. 7 (pertaining to second degree murder) and 9 (pertaining to armed criminal action) to the jury, both encompassing an acting in concert theory. Mr. Turner–Bey contends that the addition of the State's acting in concert theory constitutes a change in the State's theory and,

therefore, the second trial under this new theory violated his constitutional right to be free from double jeopardy.

Pursuant to Missouri law, an accused is responsible for criminal conduct regardless of whether he was a principal or an aider or abettor. *State v. Hermon*, 775 S.W.2d 292, 295 (Mo.App.1989). When an individual is initially charged as a principal but the jury is subsequently instructed under an acting in concert theory, no new, separate and distinct crime is charged. *Id.* The State's additional theory of criminal liability at the second trial, the acting in concert theory, did not constitute a new and distinct charge. Thus, Mr. Turner–Bey's constitutional right to be free from double jeopardy was not violated. Point (1) is denied.

■ For point (2), Mr. Turner–Bey contends the trial court erred in submitting instructions Nos. 7 and 9 to the jury, allowing the jury to convict Mr. Turner–Bey of the crimes charged on an acting in concert theory, because the evidence was insufficient to support a conviction for acting in concert. Criminal jury instructions should not be submitted in the absence of evidence to support them. *State v. Wilhelm*, 774 S.W.2d 512, 517 (Mo.App.1989). Jury instructions must be based upon substantial evidence and the reasonable inferences drawn therefrom. *Id.*

Section 562.041.1, RSMo 1986, defines when an individual is criminally liable for the conduct of another or acting in concert to further criminal activity. The statute provides in pertinent part:

A person is criminally responsible for the conduct of another when ... [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

§ 562.041.1(2).

The extent of criminal· liability imposed by § 562.041.1 has previously been considered by Missouri courts in *State v. Gonzalez–Gongora*, 673 S.W.2d 811 (Mo.App.

1984). In *Gonzalez–Gongora*, the court stated:

One who, before or during the commission of a crime, intentionally or knowingly aids or encourages the commission thereof is guilty of that offense. *Aiders and abettors*, who act with common purpose with active participants in the crime, *incur criminal liability by any form of affirmative advancement of the enterprise.* The evidence need not show that defendant personally committed every element of the crime. Among other things, an indicia of aiding and abetting are presence at the scene of the crime, flight therefrom and association with others involved before, during and after commission of the crime. Proof of any form of participation by defendant in the crime is enough to support a conviction and his presence at the scene, his companionship and conduct before and after the offense, are circumstances from which one's participation in the crime may be inferred.

*Id.* at 813. (Emphasis added.)

Under the standard set forth in *Gonzalez–Gongora*, substantial evidence, together with the reasonable inferences drawn therefrom, supports the trial court's decision to submit jury instructions Nos. 7 and 9 representing the State's theory of acting in concert. The evidence presented at trial demonstrates that moments after the fatal shots were heard by a witness, Mr. Turner–Bey was observed with the victim's body near the crime scene, with the murder weapon, and with the victim's blood smeared about his clothing. This evidence, together with the reasonable inferences therefrom, demonstrates Mr. Turner–Bey's "affirmative advancement of the enterprise" and supports the trial court's decision to submit instructions Nos. 7 and 9. Point (2) is denied.

■ For point (3), Mr. Turner–Bey contends the trial court erred in submitting jury instructions Nos. 7 and 9 because these instructions constitute an amendment to the original indictment charging him, as a principal, with first degree murder and armed criminal action. Mr. Turner–Bey

again argues that these instructions allowed the jury to convict him under a new and different theory of acting in concert when the original indictment charged him solely as a principal. As previously stated, Missouri law has "repeatedly held that even though a defendant is charged as a 'principal,' it is not error to submit his guilt as an 'aider.'" *State v. Randleman*, 705 S.W.2d 98, 101 (Mo.App.1986). The trial court did not err in submitting these instructions although the indictment charged Mr. Turner–Bey as a principal. Mr. Turner–Bey's third point is denied.

■ For point (4) on appeal, Mr. Turner–Bey contends the trial court erred in submitting instructions Nos. 7 and 9 to the jury because these instructions misstate the law of acting in concert as defined in § 562.041 and the common law. Additionally, Mr. Turner–Bey contends the trial court erred in failing to sustain his objection to the prosecutor's allegedly improper closing argument. Mr. Turner–Bey argues that the prosecutor misstated the law by informing the jury, during closing argument, that it could find him guilty of acting in concert to commit murder merely by finding that Mr. Turner–Bey dragged the victim's bleeding body and placed it in his truck.

Missouri law has consistently held that this court lacks the authority to declare as erroneous pattern instructions adopted by the Missouri Supreme Court for standard use. *State v. Fowler*, 762 S.W.2d 540, 541 (Mo.App.1988); *State v. Mick*, 674 S.W.2d 554, 558 (Mo.App.1984). The contested portions of instructions Nos. 7 and 9, concerning the State's acting in concert theory, are taken from MAI–CR 3d 304.04. Therefore, this court lacks the authority to declare these instructions erroneous for misstating the law.

■ During closing argument, the prosecuting attorney stated to the jury:

[T]he second instruction for murder in the first degree is called acting in concert, and if for some reason you believe that somebody with no motive, with no opportunity, no real reason to do it, shot Anise Davis, and that all Oscar Turner-Bey did was drag this bleeding body and put it in a pickup truck, the uncontradicted evidence is that he was alive at the time.... and for an hour and sixteen minutes while he's driving him away to throw the body away he's alive. And in the State of Missouri, that makes this man guilty of murder.

Mr. Turner–Bey contends the trial court erred in overruling his objection to this argument because the prosecutor misstated the law.

The trial court possesses broad discretion in controlling closing arguments and wide latitude is ordinarily accorded counsel in his summary. *State v. Willis*, 764 S.W.2d 678, 680 (Mo.App.1988). "Only when the argument is plainly unwarranted and has a prejudicial effect on the jury's determination will an abuse of the trial court's discretion be found." *Id.* Under the standard established in *Gonzalez–Gongora*, 673 S.W.2d at 813, the prosecutor properly informed the jury that it could find Mr. Turner–Bey guilty of murder, under an acting in concert theory, if the jury found he dragged Anise Davis to the truck, put him in the truck, and drove away to dispose of the body. The trial court did not abuse its discretion in overruling Mr. Turner–Bey's objection to this argument. Point (4) is denied.

Mr. Turner–Bey next contends, as point (5), that jury instructions Nos. 7 and 9 misstate the law in Missouri by providing that the jury could find Mr. Turner–Bey guilty under the State's acting in concert theory of criminal liability if he "encouraged" another person to commit the crime. Mr. Turner–Bey argues that under § 562.041 "encouragement" alone is insufficient to convict a defendant. However, as previously stated, jury instructions Nos. 7 and 9 follow MAI–CR 3d 304.04, and this court lacks the authority to declare such pattern instructions erroneous. *State v. Mick*, 674 S.W.2d at 558. Mr. Turner–Bey's point (5) is denied.

■ Mr. Turner–Bey contends, as point (6), that the trial court erred in submitting to the jury instruction No. 9, the verdict

directing instruction for armed criminal action. As previously stated, instruction No. 9 encompassed the State's acting in concert theory. Mr. Turner–Bey claims that the trial court erred in submitting this instruction because § 571.015, the statute defining the crime of armed criminal action, does not specifically provide for criminal liability under an acting in concert theory.

Section 562.041 defines when an individual is criminally responsible for the conduct of another and does not require that the particular statute defining the underlying offense, in this case § 571.015, specifically provide for liability under an acting in concert theory. In *State v. Clay*, 748 S.W.2d 44 (Mo.App.1988), the court found the defendant guilty, under an acting in concert theory pursuant to § 562.041, of committing armed criminal action as defined in § 571.015. *Id.* at 46. In *Clay*, the court held that "if one has embarked upon a course of criminal conduct with others, one is responsible for those crimes which one could reasonably anticipate would be a part of that conduct." *Id.* The jury found that Mr. Turner–Bey embarked on a course of conduct to murder or act in concert with another to murder Anise Davis, and Mr. Turner–Bey is, therefore, criminally liable for those crimes, including armed criminal action, which one could reasonably anticipate would be a part of that conduct. Point (6) is denied.

■ For point (7), Mr. Turner–Bey contends the trial court abused its discretion by failing to exclude the testimony of Roland Allen. Mr. Turner–Bey claims that the prosecutor's late endorsement of this witness violated Rule 25.03 requiring that the State disclose to a criminal defendant the names of all its witnesses. Mr. Turner–Bey further contends that a portion of Mr. Allen's testimony was acquired at a time when Mr. Allen was acting as the State's agent and, therefore, introduced in violation of his constitutional rights.

Roland Allen was an inmate at the Jackson County Jail when Mr. Turner–Bey was incarcerated there awaiting his first trial. Following the first trial, Roland Allen contacted the prosecuting attorney's office and claimed that, during a conversation with Mr. Turner–Bey, the defendant admitted committing the homicide of Anise Davis. After his initial contact with the prosecutor's office, Roland Allen claimed that he held a second conversation with Mr. Turner–Bey in the jail's law library. During this second conversation, Roland Allen claimed that Mr. Turner–Bey again admitted to murdering Anise Davis. Roland Allen again contacted the prosecutor's office and a second meeting was arranged between him and the prosecuting attorney. During this second meeting, the prosecutor agreed to dismiss a forgery charge pending against Mr. Allen and lower his bond if he would testify as the State's witness at Mr. Turner–Bey's second trial. According to Mr. Allen's recollection, this arrangement was reached after Christmas of 1988 but before the beginning of 1989.

On February 8, 1989, the prosecuting attorney telephoned Mr. Turner–Bey's attorney and stated that he intended to call a new witness at the second trial. On February 10, 1989, the prosecuting attorney again telephoned Mr. Turner–Bey's attorney and revealed the name of the new witness, Roland Allen. On February 16, 1989, the State produced Mr. Allen for a deposition and five days later, on February 21, 1989, Mr. Turner–Bey's second trial commenced.

At a pretrial conference, Mr. Turner–Bey objected to the State's late endorsement of Roland Allen as a witness and requested that the court exclude his testimony. In response to Mr. Turner–Bey's objection, the prosecuting attorney explained that Mr. Allen was an inmate with Mr. Turner–Bey in the Jackson County Jail causing the prosecutor's office to have legitimate concern for Mr. Allen's safety if his name were revealed prior to his release on bail. Although Mr. Turner–Bey objected to the introduction of Mr. Allen's testimony, he refused, through his attorney, to seek a continuance in order to more properly prepare for Mr. Allen's testimony. The trial court overruled Mr. Turner–Bey's objections and allowed the witness to testify.

■ The state is required, pursuant to Rule 25.03, to disclose to a criminal defendant the names of all its witnesses. This duty to disclose the witnesses' names is a continuing one. *State v. Lamphier*, 745 S.W.2d 166, 169 (Mo.App.1987). "The purpose of the discovery rule is to enable a defendant to adequately prepare his defense to ensure him a fundamentally fair trial." *Id.*

■ Whether to apply sanctions and determining what sanctions to apply when the state does not make timely disclosure of witnesses' names are questions left to the sound discretion of the trial court. *State v. Skinner*, 734 S.W.2d 877, 886 (Mo. App.1987). The appellate courts will intervene only where a defendant demonstrates that the state's failure to make a timely disclosure resulted in fundamental unfairness. *Id.* One of the remedies a trial court may utilize when a possible untimely disclosure has occurred is granting the defendant a continuance. *Lamphier*, 745 S.W.2d at 169. Where, such as here, the defendant rejects this remedy to an alleged untimely disclosure, he cannot later contend that the trial court's failure to provide a remedy resulted in fundamental unfairness. *See State v. Mansfield*, 793 S.W.2d 609, 614 (Mo.App.1990); *Lamphier*, 745 S.W.2d at 169. The trial court did not abuse its discretion by allowing Roland Allen to testify.

■ Mr. Turner–Bey also contends that Roland Allen was acting as an agent for the State at the time that the second incriminating statement was allegedly made to Mr. Allen in the jail's law library. Mr. Turner–Bey argues that, as a government agent, Mr. Allen violated his constitutional right to counsel by eliciting this second statement. In order for defendant's constitutional right to counsel to be violated, the person eliciting the incriminating information must be acting as a government agent. *U.S. v. Watson*, 894 F.2d 1345, 1347 (D.C.Cir.1990). An individual inmate, acting on his own initiative, and deliberately eliciting incriminating information, is not acting as a government agent. *Id.* As in *Watson*, Mr. Turner–Bey failed to present any evidence that the prosecuting attorney encouraged Mr. Allen to talk with Mr. Turner–Bey and elicit the second statement. *Id.* at 1348. Mr. Turner–Bey's point (7) is denied.

■ Mr. Turner–Bey next contends, as point (8), that the trial court erred in denying his motion to dismiss the charges due to misconduct before the grand jury, the fact that the prosecutor intentionally failed to record the grand jury proceedings, and due to the trial court's failure to grant defendant a preliminary hearing. On January 8, 1988, the grand jury returned an indictment charging Mr. Turner–Bey with first degree murder and armed criminal action. On December 5, 1988, the first day of Mr. Turner–Bey's first trial, the prosecuting attorney filed an amended information before trial began in lieu of indictment charging Mr. Turner–Bey, as a class X offender, with first degree murder and armed criminal action. The information alleged the same crimes charged in the indictment. The trial court did not hold a preliminary hearing on the amended information.

The State argues that the prosecutor properly substituted the amended information for the grand jury indictment pursuant to Rule 23.08. The State contends that the subsequent amended information precludes this court from reviewing any error allegedly arising out of the grand jury proceedings. The State, relying upon *State v. Johnson*, 504 S.W.2d 23 (Mo.1973), and *State v. Cooksey*, 787 S.W.2d 324 (Mo.App. 1990), claims that any alleged error in the indictment would not contaminate or render ineffective the substitute information under which the State proceeded to trial. A preliminary hearing was not required and was not held on the substitute information because the information filed was substituted for the then-pending indictment and charged no additional crimes. *See* § 544.250. However, the underlying grand jury's indictment remains the basis for establishing probable cause to charge Mr. Turner–Bey with first degree murder and armed criminal action. Therefore, the underlying grand jury indictment remains

susceptible to this court's review for any alleged error.

Mr. Turner–Bey first contends that the grand jury's indictment in this case is improper because of alleged prosecutorial misconduct before the grand jury. Mr. Turner–Bey claims that the prosecutor of Jackson County, Missouri, arbitrarily decides when to proceed by grand jury and further arbitrarily decides when to record the grand jury's proceedings. Recordation of grand jury proceedings is a preferable practice which allows the courts to ensure that no abuses of the grand jury proceedings occur. *See U.S. v. John,* 508 F.2d 1134, 1142 (8th Cir.1975), *U.S. v. Arradondo,* 483 F.2d 980, 984 n. 4 (8th Cir.1973)[2]. However, Missouri law does not require that grand jury proceedings be recorded. *State v. Shives,* 601 S.W.2d 22, 25 (Mo.App. 1980). Since recordation is not required by law, this court is not able to find that the prosecutor acted arbitrarily in deciding not to entreat the grand jury to permit or facilitate recordation of its proceedings. Additionally, the decision regarding whether to proceed by indictment or information is vested with the prosecutor's discretion and a criminal defendant may not complain when the prosecutor chooses to exercise that discretion by properly conducting grand jury proceedings. *State v. McGee,* 757 S.W.2d 321, 325 (Mo.App.1988). Point (8) is denied.

Mr. Turner–Bey next contends, as point (9), that the circuit court erred in denying his Rule 29.15 motion for postconviction relief because he was denied effective assistance of counsel and because newly-discovered evidence exists which warrants a new trial. On January 21, 1988, the Jackson County Public Defender's Office entered its appearance on behalf of Mr. Turner–Bey at his arraignment. On April 12, 1988, the Jackson County Public Defender's Office filed a motion to withdraw which was subsequently granted. April 21,

1988, the Jackson County Special Public Defender was appointed and entered his appearance on behalf of Mr. Turner–Bey. On May 24, 1988, the Special Public Defender also filed a motion to withdraw which was granted on June 1, 1988. On June 23, 1988, Charles Atwell was hired as a contract attorney by the State Public Defender's Office and filed his entry of appearance on behalf of Mr. Turner–Bey. Mr. Turner–Bey contends that during this period of time from January 21, 1988, until June 3, 1988, he only met with his attorney once and, as a result of this lack of representation, crucial evidence from his house and truck were destroyed.

Mr. Turner–Bey has the burden of proving his alleged grounds for postconviction relief by a preponderance of the evidence. Rule 29.15(h). This court's review is limited to determining whether the circuit court judgment is clearly erroneous. Rule 29.-15(j). The circuit court's determination is deemed clearly erroneous only if a review of the entire record leaves this court with a firm impression that a mistake has been made. *State v. Taylor,* 778 S.W.2d 276, 280 (Mo.App.1989). Mr. Turner–Bey bears a particularly heavy burden when attempting to prove ineffective assistance of counsel. *Id.*

In order to prevail on his claim, Mr. Turner–Bey must demonstrate that (1) his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances and (2) that he was prejudiced as a result. *Id.* If Mr. Turner–Bey fails to demonstrate the requisite prejudice, this court may dispose of his claim without addressing counsel's performance. *Sidebottom v. State,* 781 S.W.2d 791, 796 (Mo. banc 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990). In order to show sufficient prejudice, Mr. Turner–Bey must demonstrate a reasonable probability that, but for counsel's allegedly unprofessional error, the result of the pro-

**2.** Federal Rules of Criminal Procedure have been amended to require that grand jury proceedings be recorded in the federal system. *See* Rule 6 Fed.R.Crim.P. In Missouri, grand jury proceedings are governed by statute. *See* Chap-

ter 540. While such a statute requiring recordation is desirable in Missouri, recordation is not currently required under the present statutes.

ceeding would have been different. *Lamphier v. State*, 773 S.W.2d 868, 870 (Mo. App.1989). Mr. Turner–Bey fails to describe any evidence which he claims was destroyed and fails to articulate how that evidence would have resulted in a different outcome in the underlying proceedings. Mr. Turner–Bey failed, therefore, to demonstrate he was prejudiced.

Mr. Turner–Bey also contends that he was entitled to postconviction relief under Rule 29.15 because of newly discovered evidence. In particular, Mr. Turner–Bey alleges that since his trial, he has discovered evidence that Roland Allen committed perjury while testifying at trial. In support of this allegation, Mr. Turner–Bey produced the testimony of Randall Sowell at the evidentiary hearing on his Rule 29.15 motion. However, it is well settled in Missouri that newly discovered evidence is not a proper basis for relief in a motion to vacate sentence. *Trotter v. State*, 736 S.W.2d 536, 538 (Mo.App.1987). Mr. Turner–Bey's newly-discovered evidence is not a basis for postconviction relief pursuant to Rule 29.15. Mr. Turner–Bey's point (9) is denied.

For point (10), Mr. Turner–Bey contends the circuit court failed to comply with Rule 29.15(i) because the court's findings of fact and conclusions of law did not cover all issues presented by his Rule 29.15 motion. However, Missouri law does not require that the trial court enter itemized findings of fact and conclusions of law. *Liggins v. State*, 786 S.W.2d 207, 209 (Mo. App.1990). Rather, the rule requires that the court's findings and conclusions be sufficient to adequately allow this court to review the movant's contentions, *State v. Langlois*, 785 S.W.2d 679, 682 (Mo.App. 1990), and determine whether the findings and conclusions were clearly erroneous. *Liggins*, 786 S.W.2d at 209. While the six pages of findings of fact and conclusions of law entered by the circuit court may not have addressed every contention raised by Mr. Turner–Bey, these findings were sufficient to allow this court to review Mr. Turner–Bey's contentions and conclude

that the trial court's actions were not clearly erroneous. Point (10) is denied.

For point (11) on appeal, Mr. Turner–Bey contends the trial court erred in submitting MAI–CR 3d 302.04 to the jury defining the State's burden of proof. In particular, Mr. Turner–Bey contends that the definition of reasonable doubt contained within this instruction violated his due process rights. This same argument regarding Missouri's "reasonable doubt" instruction has been regularly advanced and uniformly rejected in numerous cases all of which approve the language of the pattern instruction. *State v. Willis*, 764 S.W.2d at 679. MAI–CR 3d 302.040 properly instructs the jury upon the standard which they are to use in determining the defendant's guilt or innocence. *State v. Guinan*, 732 S.W.2d 174, 178 (Mo. banc 1987), *cert. denied*, 484 U.S. 933, 108 S.Ct. 308, 98 L.Ed.2d 266 (1987). Point (11) is denied.

For his final point, point (12), Mr. Turner–Bey contends that the cumulative effect of the trial court's errors denied him a fair trial. However, where the appellate court finds no error in any of the challenged rulings, the defendant's assertion of cumulative error must also be denied. *State v. Leisure*, 772 S.W.2d 674, 683 (Mo. App.1989), *cert. denied*, — U.S. —, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990). Mr. Turner–Bey's point (12) is, therefore, denied.

Mr. Turner–Bey's conviction for second degree murder and armed criminal action, together with the circuit court's denial of his Rule 29.15 motion is affirmed.

All concur.