STATE of Missouri, Respondent,

v.

**Wayman L. BOYINGTON, Jr., Appellant.**

No. WD 44036.

Missouri Court of Appeals,
Western District.

April 7, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 2, 1992.

Application to Transfer Denied
July 21, 1992.

Anthony C. Cardarella, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Robin H. Grissom, Jefferson City, for respondent.

Before TURNAGE, P.J., and KENNEDY and BERREY, JJ.

BERREY, Judge.

Appellant appeals his conviction by a jury of Count I, burglary in the first degree, Count III, robbery in the first degree, and Count V, murder in the second degree. Subsequently, the court sentenced appellant to fifteen years on Count I; twenty years on Count III, concurrent; and thirty years on Count V, concurrent with Count I; but, consecutively with Count III.

Teresa Diane Johnson and her supervisor, Carol Gibson, left work about 5:00 p.m. on May 15, 1989, and stopped to have a drink at a local bar. They left the bar at approximately 6:45 p.m. and Johnson proceeded to her home at 7617 East 52nd Street. At about 7:30 p.m. Moncella Hughes came to Johnson's home. The two had a few drinks and then drove in Johnson's car to go out for dinner. When they returned home Johnson backed the car into her driveway. Mrs. Hughes left Johnson's home at approximately 10:30 p.m.

On this same evening, appellant was in Johnson's neighborhood visiting his children and a girlfriend. Appellant knew Mrs. Johnson quite well, as she had been his father's girlfriend for sometime. Ap-

pellant left the house of his girlfriend, Karen Williams, later that evening and proceeded down the street past the Johnson home.

Johnson did not appear for work on May 16 or May 17. On May 17 the police were notified that she was missing. They went to her home and entrance was gained through a bedroom window by a fire department employee who had been summoned by the police.

Sergeant Mosley entered the house and observed blood on the walls and carpeting. There were also bloody drag marks on the linoleum in the kitchen leading down the steps to the garage. Sergeant Mosley followed the drag marks into the garage and to the back of the car. He then observed what appeared to be dried blood by a wheel well at the back of the car. The trunk was forced open and the body of Mrs. Johnson was found. She had been shot five times in the head.

On May 16 the appellant stopped by the home of Sabrina Lowe, who was another one of his girlfriends. He asked her to go with him and help him pawn a gold chain. Mrs. Lowe pawned the chain and received $100. Many witnesses testified the chain belonged to Mrs. Johnson. Appellant also drove to a home on 67th and Chestnut and went inside, he returned with a television. He and Lowe then drove to the home of Tyra France at 69th and Agnes and sold the television to her for $100.

Again, many witnesses testified the television was the property of Mrs. Johnson. During the time the appellant was running these "errands", he was wearing blue and white Reebok shoes.

The police processed the crime scene and found shoe prints in the dirt and in the blood inside the Johnson home. These prints had the same characteristics as the Reebok athletic shoes. One of the prints was specifically identified as coming from appellant's blue and white Reebok shoes. There was also a bloody palm print inside the trunk and it was positively identified as coming from appellant's left palm.

Appellant was subsequently arrested and transported to the interrogation room of the homicide unit of the Kansas City Police Department. Appellant was advised he was a suspect in the homicide of Mrs. Johnson and given his Miranda rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant refused to sign the Miranda waiver and requested an attorney. The questioning then immediately ceased.

When being taken to a jail cell the appellant indicated he wished to talk further with the police. He was taken back to interrogation, given the Miranda warning again and read and signed the Miranda waiver. At this time he denied any involvement in the murder of Mrs. Johnson and denied he had been in her home. He was then informed his prints were found inside the house, and he replied, "its a chess game now. I can't expect any breaks from the system." Officer Russell inquired of appellant if he had any scratches on his body and appellant said he did not. However, scratches were found on his hands and back.

Several days later appellant again contacted the police to talk to them. He was removed from jail, taken to the police station and again given the Miranda warning. At this time he admitted he had been in Johnson's home and had removed her television. Appellant also identified one Larry Barnes as being in Johnson's home and stated that Barnes had a gun. At trial appellant recanted this version and stated he'd been "lying to the police officers." He then gave another version of the events.

Appellant alleges three points of trial court error: (1) failure to sustain defendant's motion to suppress statements; (2) submitting Instruction No. 5, 6, 9 and 11 MAI CR3rd 304.04 as it mistakes the law of acting in concert as defined in § 562.041, RSMo 1986; and (3) denying defendant's motion for acquittal for the reason the evidence when taken as a whole is insufficient as a matter of law to sustain the conviction.

■ Appellant's first point on appeal alleges the trial court erred in overruling defense counsel's motion to suppress the appellant's statement given to the police because they were made after he had re-

fused to sign a Miranda waiver and after he had affirmatively requested an attorney. Appellant further alleges the police were deceptive and rendered inverse Miranda advice.

Evidence adduced at the suppression hearing established that when appellant was first taken into custody for interrogation he refused to execute a Miranda waiver and said, "Maybe I need a lawyer." The officers immediately ceased interrogation and were in the process of taking him to jail to be booked on a charge of murder. As the detective and appellant approached the elevator to the detention unit the appellant said "Wait a minute, you know, I want to talk to you, but if I talk to you, would it be admitting guilt." The officer responded in the negative and said it would demonstrate the appellant was aware of his Miranda rights. The officer told appellant if he signed the Miranda waiver he would not be admitting guilt. Close scrutiny of the record fails to indicate any devious or legally spurious remarks made by the officers. To the contrary their behavior was exemplary as it should be under the circumstances they were faced with.

It is readily apparent from the transcript testimony the police were diligent and conscious of appellant's Miranda rights at every stage of the proceedings. The appellant is free to change his mind about talking to the police or requesting an attorney. The record does not demonstrate any coercion, undue influence, devious or legally spurious remarks made by any officer.

The trial court made the following oral finding at the conclusion of the hearing of appellant's motion to suppress.

As to the motion to suppress filed by the defendant specifically seeking the suppression of the defendant's statement, as I read *Edwards v. Arizona* and Oregon against Bradshaw, those cases allow the introduction of a defendant's statements even after an initial invocation of a wish to have an attorney present when two elements are shown. First, that the defendant initiated the further communication with the police; and, second, the circumstances show that the defendant did so free of any coercion, threat or intimidation. There was no evidence of any threat, coercion or intimidation here, and the evidence was that the defendant initiated the communication. Both elements being present, the statement will not be suppressed. The motion, then, is overruled.

The ruling of the trial court on the motion will be affirmed on appeal if the evidence is sufficient to sustain it. *State v. Bittick*, 806 S.W.2d 652, 654 (Mo. banc 1991). All the facts and reasonable inferences favorable to the trial court ruling shall be considered in determining sufficiency of the evidence. *Id.*

The trial court is the judge of credibility of witnesses and weight of the evidence. *State v. Brown*, 814 S.W.2d 304, 307 (Mo. App.1991). It is clear from the record the trial court's decision was correct and amply supported by the evidence. Further the appellant initiated the conversation with the police after he had initially declined to sign a Miranda waiver and requested an attorney.

The appellant seeks to take one sentence out of context. Officer Russell told appellant, "if he signed the waiver, it would not be admitting guilt." The exact testimony is as follows:

Q. Did you tell him that if he talked, it wouldn't be admitting guilt, or if he signed the Miranda waiver it wouldn't be admitting guilt?

A. I told him if he signed it, it wouldn't be admitting guilt.

Q. I'm sorry?

A. I told him if he signed the waiver, it would not be admitting guilt.

Q. What did you tell him it would mean?

A. I told him it would mean only that he was aware of his rights under the Miranda Warning.

When the accused himself voluntarily initiates further conversation with the police after having requested an attorney he waives his Fifth Amendment protection. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Minnick v. Mississippi*, —— U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *State v. Bannister*, 680 S.W.2d 141, 147–48 (Mo. banc 1984). Appellant's Point I is denied.

■ For his second point, appellant contends the trial court erred in submitting instruction nos. 5, 6, 9 and 11 to the jury because these instructions misstate the law of acting in concert as defined by § 562.041 RSMo 1986. The defendant claims MIA–CR3d 304.034 fails to state all of the elements of the offense of acting in concert.

While the appellant claims trial court error, he does not assert the above instructions deviate from the pattern instructions adopted by the Missouri Supreme Court. Rather, appellant contends these instructions are fatally flawed. He complains the state is allowed to "escape" its burden of proof in that these instructions do not clearly state the defendant must have aided and abetted another person before or during the commission of the crime.

Missouri law has consistently held this court lacks the authority to declare as erroneous pattern instructions adopted by the Missouri Supreme Court for standard use. *State v. Turner–Bey*, 812 S.W.2d 799, 805 (Mo.App.1991). "[O]nce a pattern instruction has been adopted by the Missouri Supreme Court, the appellate courts are powerless to declare the instruction erroneous." *State v. Turner*, 705 S.W.2d 108, 110 (Mo.App.1986).

The contested portions of instructions 5, 6, 9, and 11 are taken from MAI–CR3d. Therefore this court lacks the authority to declare these instructions erroneous for misstating the law. *State v. Turner–Bey*, 812 S.W.2d at 805. Appellants second point on appeal is denied.

■ For Point III appellant alleges the trial court erred in denying his motions for judgment of acquittal as to all counts because the evidence was insufficient. Appellant also alleges the court must apply the circumstantial evidence rule because the appellant's convictions were based wholly on circumstantial evidence.

In reviewing the sufficiency of the evidence the court must view the evidence in the light most favorable to the verdict, together with all reasonable inferences that can be reasonably drawn from the evidence and disregard contrary evidence. *State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1976); *cert. denied*, 431 U.S. 957, 97 S.Ct.

2682, 53 L.Ed.2d 275 (1977). The facts must be consistent with each other and with the hypothesis of appellant's guilt and inconsistent with his innocence and exclude every reasonable hypothesis of his innocence. *State v. Franco*, 544 S.W.2d at 534.

In the instant case we have the appellant's access to the victim's house, his possession of her television set on the day following the murder as well as possession of her gold chain. The evidence additionally showed the presence of his bloody palm print in the trunk of the car where the victim's body was found, the imprint of appellant's shoe sole in the blood on the floor of victim's residence, appellant's presence in the immediate area of the victim's house within forty-eight hours of her demise, and the fact that appellant had known the victim for some period of time. "[T]he mere existence of other possible hypothesis is not enough to remove the case from the jury." *State v. Thomas*, 452 S.W.2d 160, 162 (Mo.1970).

The court affirmed the conviction in *State v. Maxie*, 513 S.W.2d 338 (Mo. banc 1974), where the only evidence linking defendant to the crime was his finger print on a box top located on the bedroom floor of the victim's home. "The defendant ruled out any reasonable possibility that his fingerprint was put on the box top under circumstances other than at the time of the homicide." *Id.* at 343. The court in *Maxie* held the presence of the print on the boxtop under the circumstances and evidence was sufficient and sustained the conviction.

■ The appellant gave a statement that he burglarized the victim's home and took her television. He also stated Larry Barnes was present and possessed a handgun. This statement constituted an admission by the appellant that he took the victim's television and that Barnes was present in the victim's home in possession of a gun. This is direct evidence of appellant's guilt. However, a statement need not be an express acknowledgement of guilt to qualify as an admission. Whether a statement fits the definition depends upon all the circumstances. *State v. Bannister*, 680 S.W.2d at 148. It is clear the evidence of appellant's guilt was not "wholly circumstantial." Therefore, appellant

may not assume the circumstantial evidence rule applies. *State v. Newbold,* 731 S.W.2d 373, 380 (Mo.App.1987).

No purpose would be served by re-examining all of the facts and evidence contained herein. There was ample evidence of appellant's involvement. Appellant's testimony that he fled after seeing the victim's body in the trunk of the car coupled with his failure to summon assistance was clearly admissible to demonstrate his consciousness of guilt contrary to any theory of innocence. *State v. Rodden,* 728 S.W.2d 212, 219 (Mo. banc 1987).

Appellant pawned the victim's necklace and gave the pawnbroker an alias. He additionally lied to the police when first questioned. "Exculpatory statements proven false, evidence a consciousness of guilt and therefore bear directly on the issue of guilt or innocence." *Id.*

It is apparent the state's evidence submitted at trial was sufficient for the rational trier of fact to have found appellant guilty as either the principal or as an accomplice to the burglary, robbery, and murder of Teresa Diane Johnson. *State v. Dulany,* 781 S.W.2d 52, 53 (Mo. banc 1989). Appellant's Point III is denied.

Judgment affirmed.

All concur.